**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STEVEN SALSBERG, ESQ. and GLORIA
SALSBERG,

                    Plaintiffs/Appellants,

     against

TRICO MARINE SERVICES, INC., TRICO
MARINE ASSETS, INC., and TRICO MARINE
OPERATORS, INC.,

                Defendants/Appellees.

Case No. 07 CV 08422 (DLC)


**<u>BRIEF FOR DEFENDANTS/APPELLEES</u>**


Matthew Solum (MS 1616)
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York  10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-6460
msolum@kirkland.com

*Counsel for the Appellees/Defendants*

# TABLE OF CONTENTS

Page

INTRODUCTION ......................................................................................................1

QUESTIONS PRESENTED.......................................................................................2

STANDARD OF APPELLATE REVIEW..................................................................2

STATEMENT OF THE CASE....................................................................................4

ARGUMENT .............................................................................................................13

   I.     THE BANKRUPTCY COURT PROPERLY DISMISSED
          APPELLANTS' FRAUD CLAIM.......................................................13

        A.     Mr. Turbidy Testified About EBITDA....................................................13

        B.     Mr. Turbidy Told the Truth Regarding Trico's Q4 2004 EBITDA...........15

        C.     Mr. Turbidy Had No Motive to Lie. ....................................................19

        D.     There Was No Duty to Disclose any Additional Information. .................22

        E.     Appellants' Fraud Claim Failed for Three Additional, Independent
              Reasons. ...........................................................................................25

   II.    THE BANKRUPTCY COURT PROPERLY  DENIED APPELLANTS'
          MOTION TO AMEND........................................................................30

        A.     The Proposed Second Amended Complaint Failed to Allege That
              Mr. Turbidy Was an Officer of The Court................................................31

        B.     The Proposed Second Amended Complaint Failed to Allege That
              Mr. Salsberg Had No Opportunity to Uncover Mr. Turbidy's
              Alleged Fraud.....................................................................................33

  III.   APPELLANTS' ARGUMENT REGARDING TRICO'S NET
          OPERATING LOSS VALUATION HAS NO MERIT. ......................34

CONCLUSION...........................................................................................................35

# TABLE OF AUTHORITIES

## Cases

*Acito v. IMCERA, Inc.*,
    47 F.3d 47 (2d Cir. 1995) .................................................... 4

*Anderson v. City of Bessemer*,
    470 U.S. 564 (1985).......................................................... 3

*Anglo American Ins. Group, P.L.C. v. CalFed Inc.*,
    940 F. Supp. 554 (S.D.N.Y. 1996)................................................ 32

*Caprer v. Nussbaum*,
    825 N.Y.S.2d 55 (N.Y. App. Div. 2006) ........................................ 19

*Chill v. Gen. Elec. Co.*,
    101 F.3d 263 (2d Cir. 1996)................................................. 4, 19

*Commodity Futures Trading Com'n  v. Commodity Inv. Group, Inc.*,
    No. 05-CV-5741, 2007 WL 1519002 (S.D.N.Y. Feb. 27, 2007)....................... 24

*Commodity Futures Trading Com'n v. R.J. Fitzgerald & Co., Inc.*,
    310 F.3d 1321 (11th Cir. 2002) ............................................. 24

*Commodity Futures Trading Com'n v. Weintraub*,
    471 U.S. 343 (1985)......................................................... 32

*Diorio v. Kreisler-Borg Constr. Co.*,
    297 F. Supp. 842 (S.D.N.Y. 1968)............................................. 17

*Diorio v. Kreisler-Borg Constr. Co.*,
    407 F.2d 1330 (2d Cir. 1969)................................................ 4, 18

*E*Trade Fin. Corp. v. Deutsche Bank AG*,
    420 F. Supp. 2d 273 (S.D.N.Y. 2006) .......................................... 19

*Evans v. Ottimo*,
    469 F.3d 287 (2d Cir. 2006)................................................. 13

*Fortunato v. Ford Motor Co.*,
    464 F.2d 962 (2d Cir. 1972)................................................. 23

*Gleason v. Jandrucko*,
    860 F.2d 556 (2d Cir. 1988)............................................... 31, 33

*Gurary v. Winehouse*,
    190 F.3d 37 (2d Cir. 1999).................................................. 23

i

*Hanly v. S.E.C.*,
  415 F.2d 589 (2d Cir.1969)...................................................................... 18

*Hotel Corp. of the South v. Rampart 920, Inc.*,
  46 B.R. 758 (E.D. La. 1985) ..................................................................... 26

*Hutcheson v. Commissioner*,
  71 T.C.M. (CCH) 2425 (1996) .................................................................. 35

*In re Bonnanzio*,
  91 F.3d 296 (2d. Cir. 1996)................................................................... 2, 19

*In re Brook Valley IV Joint Venture*,
  347 B.R. 662 (8th Cir. Bankr. App. Panel 2006).................................... 32

*In re California Litfunding*,
  360 B.R. 310 (Bankr. C.D. Cal. 2007)....................................... 25, 27, 28, 29

*In re Circle K Corp.*,
  242 F.3d 380 (9th Cir. 2000) .................................................................... 30

*In re Coffee Cupboard, Inc.*,
  119 B.R. 14 (E.D.N.Y 1990) ..................................... 26, 27, 28, 29, 30

*In re Devers*,
  759 F.2d 751 (9th Cir. 1985) .................................................................... 19

*In re Emmer Bros. Co.*,
  52 B.R. 385 (D. Minn. 1985) ................................................................ 26, 29

*In re Genesis Health Ventures, Inc.*,
  324 B.R. 510 (Bankr. D. Del. 2005) ..................................................... 29, 30

*In re Hampton Hotel Investors, L.P.*,
  270 B.R. 346 (Bankr. S.D.N.Y. 2001);..................................................... 32

*In re Intermagnetics Am., Inc.*,
  926 F.2d 912 (9th Cir. 1991) .................................................................... 32

*In re M.T.G., Inc.*,
  No. 95-48268, 2007 WL 1119672 (Bankr. E.D. Mich. Apr. 16, 2007).......... 19

*In re Michelson*,
  141 B.R. 715 (Bankr. E.D. Cal. 1992).......................................... 17, 23, 32

*In re Newport Harbor Assocs.*,
  589 F.2d 20 (1st Cir. 1978)...................................................................... 27

ii

*In re Public Serv. Co. of New Hampshire,*
    43 F.3d 763 (1st Cir. 1995) ................................................................ 25, 28

*In re Reisman,*
    149 B.R. 31 (Bankr. S.D.N.Y 1993) ...................................................... 19

*In re Robbins Int'l Inc.,*
    56 F. App'x 55 (2d Cir. 2003) .............................................................. 2

*In re Sal Caruso Cheese, Inc.,*
    107 B.R. 808 (Bankr. N.D.N.Y. 1989) ................................................ 32

*In re Savino Oil & Heating,*
    99 B.R. 518 (Bankr. E.D.N.Y. 1989) .................................................. 32

*In re Tenn-Fla Partners,*
    170 B.R. 946 (Bankr. W.D. Tenn. 1994) ................................. 23, 24, 32

*In re Tenn-Fla Partners,*
    226 F.3d 746 (6th Cir. 2000) ............................................................. 23

*In re Tudor Assocs., Ltd., II,*
    64 B.R. 656 (E.D.N.C. 1986) ............................................................ 32

*In re Tully,*
    818 F.2d 106 (1st Cir. 1987) ........................................................ 4, 19

*In the Matter of Robbins Int'l, Inc.,*
    275 B.R. 456 (S.D.N.Y. 2002) ........................................................ 2, 3

*Katara v. D.E. Jones Commodities, Inc.,*
    835 F.2d 966 (2d Cir. 1987) .............................................................. 13

*Keefe v. Shalala,*
    71 F.3d 1060 (2d Cir. 1995) .............................................................. 22

*Kupferman v. Consol. Research & Mfg. Corp.,*
    459 F.2d 1072 (2d Cir. 1972) ............................................................ 31

*Maska U.S., Inc. v. Kansa Gen. Ins. Co.,*
    198 F.3d 74 (2d Cir. 1999) ................................................................ 22

*Nicholas v. U.S.,*
    384 U.S. 678 (1966) ......................................................................... 32

*O'Hara v. Weeks Marine, Inc.,*
    294 F.3d 55 (2d Cir. 2002) ........................................................... 4, 22

iii

*Ortega v. Duncan*,
    333 F.3d 102 (2d Cir. 2003)..................................................................... 3

*Rinehart v. C.I.R.*,
    85 T.C.M. (CCH) 1172 (2003) ............................................................... 35

*Rolf v. Blythe, Eastman Dillon & Co., Inc.*,
    570 F.2d 38 (2d Cir. 1978)..................................................................... 19

*S.E.C. v. Platinum Inv. Corp.*,
    No. 02 Civ. 6093, 2006 WL 2707319 (S.D.N.Y. Sept. 20, 2006) ................... 18

*S.N. Phelps & Co. v. Circle K Corp.*,
    181 B.R. 457 (Bankr. D. Ariz. 1995)....................................................... 30

*S.S. Silberblatt, Inc. v. East Harlem Pilot Block--Building 1 Housing Dev. Fund Co.*,
    608 F.2d 28 (2d Cir. 1979)...................................................................... 4

*Serzysko v. Chase Manhattan Bank*,
    461 F.2d 699 (2d Cir. 1972)................................................................... 31

*Shackelford v. C.I.R.*,
    70 T.C.M. (CCH) 945 (1995) ................................................................ 35

*State Street Trust Co. v. Ernst*,
    15 N.E.2d 416 (N.Y. 1938)................................................................... 19

*Tenn-Fla Partners v. First Union Nat'l Bank*,
    229 B.R. 720 (W.D. Tenn. 1999)...................................................... 13, 23

*Tri-Cran, Inc. v. Fallon*,
    98 B.R. 609 (Bankr. D. Mass. 1989) ....................................................... 32

*U.S. v. Payden*,
    768 F.2d 487 (2d Cir. 1985).................................................................... 3

*United States v. Mendez*,
    315 F.3d 132 (2d Cir. 2002).................................................................... 3

*United States v. Randall*,
    401 U.S. 513 (1971).............................................................................. 32

*Weldon v. United States*,
    70 F.3d 1 (2d Cir. 1995)........................................................................ 33

*Wolf v. Weinstein*,
    372 U.S. 633 (1963).............................................................................. 32

iv

## **Statutes**

11 U.S.C. § 1129 ............................................................................................................ 23

11 U.S.C. § 1144 ........................................................... 2, 11, 12, 13, 26, 27, 28, 29

26 U.S.C. § 382 ........................................................................................................ 34, 35

## INTRODUCTION

Appellants live in a world of "ifs": if Trico had lower expenses, or if it had performed better throughout 2004, or if certain debt obligations were not owed, then Trico would have been solvent. Unfortunately for Trico, Appellants' hypotheticals are not based in reality. Moreover, they are irrelevant to the question before this Court. Indeed, there is one primary question before this Court: Was the Bankruptcy Court's determination that Trevor Turbidy did not intentionally lie at Trico's confirmation hearing in January 2005 clearly erroneous? The answer is no. Although there is dispute over the precise numbers in certain instances, the following is not disputed.

- Trico's total pre-restructuring indebtedness was approximately $390 million (Disclosure Statement at I-8);

- There was at least $164 million in negative equity at Trico (*i.e.*, its liabilities were at least $164 million more than its assets) (Appellants' Br. at 25);

- Trico had at least $7.6 million in interest expense in Q4 2004 alone (Appellants' Br. at 25); and

- Mr. Turbidy believed that the preliminary Q4 2004 EBITDA (which stands for earnings before interest, taxes, depreciation and amortization) was $5.3 or $5.4 million compared to a projection of $4.1 million (Appellants' Br. at 8.)

Thus, when viewed against this backdrop, Mr. Turbidy testified that the preliminary results for Q4 2004 -- an additional approximately $1 million in EBITDA in 2004 -- were "fairly consistent" with the projections, but "wasn't spot-on, dollar for dollar," and was "slightly" but "not materially" higher. (CH Tr. at 122:14-123:4.) Accordingly, and after a full and fair trial, Chief Judge Bernstein held that Mr. Turbidy was "honest, candid and forthright" and entered judgment in Trico's favor. Because there is nothing in the record to suggest that this determination was clearly erroneous, the Bankruptcy Court's finding should be affirmed and Appellants' appeal should be denied. (*See* Section I.A to I.D.)

Once the Bankruptcy Court's determination that Mr. Turbidy told the truth is affirmed, this Court need not go further. To the extent that this Court does proceed, there are three additional independent reasons that Appellants' claim for fraud fails: (i) Appellants' claim did not involve severe allegations of fraud as required for claims pursuant to 11 U.S.C. § 1144; (ii) Appellants had the opportunity to uncover Mr. Turbidy's alleged fraud on January 19, 2005; and (iii) Appellants' claim sought to "redivide the pie." (*See* Section I.E.)

Additionally, the Bankruptcy Court did not abuse its discretion when it denied Appellants' motion to amend their complaint to add another claim for fraud on the court because, among other reasons, Appellants could have discovered the alleged "fraud" prior to the Confirmation Hearing. (*See* Section II.) Finally, Appellants' theoretical analysis regarding Trico's net operating losses is irrelevant and, in any event, fails both as a matter of fact and law. (*See* Section III.)

## QUESTIONS PRESENTED

Appellants now ask this Court to answer the following questions:

- Was the Bankruptcy Court's conclusion that Trevor Turbidy did not make a knowing misstatement with an intent to deceive the court at the Confirmation Hearing clearly erroneous?

- Did the Bankruptcy Court abuse its discretion when it denied Plaintiffs' motion for leave to amend their Amended Complaint?

For all of the reasons set forth below, the answer to these two questions is no.

## STANDARD OF APPELLATE REVIEW

On appeal, a bankruptcy court's findings of fact are set aside only if they are clearly erroneous. *In the Matter of Robbins Int'l, Inc.*, 275 B.R. 456, 464 (S.D.N.Y. 2002) (citing *In re Bonnanzio*, 91 F.3d 296, 300 (2d. Cir. 1996)), *aff'd* 56 F. App'x 55 (2d Cir. 2003). Rule 8013 provides:

> On an appeal the district or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.

Fed. R. Bankr. P. 8013. The clearly erroneous standard "does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson v. City of Bessemer*, 470 U.S. 564, 573-74 (1985). Factual findings must be upheld if "plausible in light of the record viewed in its entirety." *Id*. at 574. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." *Id.* at 573. The Second Circuit has gone so far as to hold that "[w]hen a district court's factual finding is based upon a credibility determination, we are mindful that 'particularly strong deference' should be granted to the finding in light of the factfinder's unique ability to assess the witness." *Ortega v. Duncan*, 333 F.3d 102, 107 (2d Cir. 2003) (citing *United States v. Mendez*, 315 F.3d 132, 135 (2d Cir. 2002)).

Appellants argue that there is an embedded question of law in the Bankruptcy Court's determination of Mr. Turbidy's honesty -- "[i]f a witness knows a fact and is asked about that fact at trial but misunderstands the question and answers a different question and gives an answer that is true as to the question-not-asked but false as to the question actually asked, has the witness testified falsely?" (Appellants' Br. at 14) -- but Appellants are wrong. Appellants' argument fails because the Second Circuit has consistently held that the clearly erroneous standard is appropriate when reviewing findings regarding a witness's truthfulness and credibility. *See Duncan*, 333 F.3d at 106; *see also U.S. v. Payden*, 768 F.2d 487, 491 (2d Cir. 1985); *Robbins Int'l*, 275 B.R. at 468 ("The Court reviews the Bankruptcy Court's factual

finding that MBW did not produce evidence to support its fraud claim under the clearly erroneous standard."). Even the two cases that Appellants cite after attempting to contort the question into a conclusion of law both apply the clearly erroneous standard. *Diorio v. Kreisler-Borg Constr. Co.*, 407 F.2d 1330, 1330-31 (2d Cir. 1969) (affirming district court's application of the clearly erroneous standard to overturn a bankruptcy referee's decision because there was no evidence submitted by the party bearing the burden of proof); *In re Tully*, 818 F.2d 106, 112 (1st Cir. 1987) (applying the clearly erroneous standard, the circuit court affirmed the bankruptcy court's findings "unreservedly."). Accordingly, the clearly erroneous standard applies to the first question presented in this appeal.

A trial court's denial of leave to amend a complaint, on the other hand, is set aside only if there was an abuse of discretion. *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271 (2d Cir. 1996). Leave may be denied so long as there is a good reason for it, such as futility, bad faith or undue delay. *See S.S. Silberblatt, Inc. v. East Harlem Pilot Block--Building 1 Housing Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979); *Acito v. IMCERA, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) (affirming district court's denial of leave to amend complaint because supplemental allegations did not cure the futile complaint); *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 68 (2d Cir. 2002). ("We review the district court's decision to deny O'Hara leave to amend his complaint for abuse of discretion."). Accordingly, the abuse of discretion standard applies to the second question presented in this appeal.

## STATEMENT OF THE CASE

### Trico Files for Bankruptcy Protection.

By the end of April 2004, Trico's stock price had declined more than 80% from the beginning of 2004. Shortly thereafter, Standard & Poor's Ratings Services placed Trico's credit rating on credit watch. In May 2004, Trico announced that it would use the 30-day grace

4

period with respect to the $11.1 million interest payment on its $250 million Senior Notes (the "Notes").  Shortly thereafter, Trico announced that it would not make the payment of interest within the 30-day grace period, and on September 15, 2004, the Senior Secured Lenders accelerated payment of the total outstanding indebtedness of Trico, including the $250 million Notes.  As a result of its financial woes, on November 12, 2004, Trico filed a Disclosure Statement with the Securities and Exchange Commission, outlining its plan to restructure.  (*See* Bankr. Ct. Order dated August 23, 2007 ("August 23, 2007 Order"), at 3-5; *see also* Disclosure Statement at I-5 to I-7.)[1]

On December 21, 2004, Trico commenced "pre-packaged" chapter 11 cases (the "Plan") before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  (August 23, 2007 Order at 6.)  At the time Trico filed for bankruptcy, its estimated total pre-restructuring indebtedness was $390 million (Disclosure Statement at I-8), and its annual interest expense for 2004 was projected to be approximately $32 million. (Disclosure Statement at Ex. C, at 7.)

Under the Plan, Trico proposed to exchange the Notes for 100% of New TMS Common Stock, subject to dilution based upon the grant of certain options and warrants. Accordingly, the Plan cancelled the old common stock and did not provide for any distributions to equity, but the Noteholders agreed to have the old TMS common shareholders receive warrants exercisable for up to 10% of the New TMS Common Stock.  Essentially, the

---

[1]    For more background information regarding the events leading up to the commencement of Trico's restructuring, see the August 23, 2007 Order at 3-5, Disclosure Statement at I-5 to I-7, and Trico's Proposed Findings of Fact ¶¶ 1-10.

Noteholders agreed to give a portion of their distribution to equity. (Bankr. Ct. Order dated January 6, 2006 ("January 6, 2006 Order"), at 3-4.)

**Mr. Salsberg Becomes Interested in Trico.**

After Trico filed its Disclosure Statement and after Trico filed for bankruptcy protection, Steven Salsberg became interested in Trico. Thus, although he did not own any Trico shares, Mr. Salsberg filed an objection to the Plan "on behalf of all holders of the Common Stock of Trico Marine Services, Inc." (August 23, 2007 Order at 6.) Essentially, Mr. Salsberg claimed that Trico was not insolvent and, instead, had sufficient cash to pay its obligations. (*See* Objection to Trico's Plan, January 10, 2005; *see also* Confirmation Hearing Tr. dated January 19, 2005 ("CH Tr."), at 128:11-133:18.) After he filed the objection and shortly before the confirmation hearing, Mr. Salsberg obtained 44,000 shares of Trico stock (worth approximately $6,000) and he pursued an objection at the confirmation hearing (the "Confirmation Hearing"). (*See* August 23, 2007 Order at 6 and Ex. 61 at TR10.)

Mr. Salsberg had the opportunity to conduct discovery in advance of the Confirmation Hearing, but he failed to do so. (CH Tr. at 17:11-14.) Specifically, "Steven could have sought expedited discovery to take Turbidy's deposition prior to the confirmation hearing," and/or he could have "issued a trial subpoena directing Turbidy to produce the actual fourth quarter results at the confirmation hearing," but he did neither of these things. (Bankr. Ct. Order dated November 22, 2006 ("November 22, 2006 Order"), at 12.) Indeed, Mr. Salsberg even later admitted that he should have conducted discovery before the Confirmation Hearing. (Trial Tr. dated May 21, 2007 ("Trial Tr."), at 202:10-13.)

**Mr. Salsberg Objects to the Plan.**

Mr. Salsberg presented his objection at the Confirmation Hearing on January 19, 2005. However, because Mr. Salsberg was not admitted to the United States District Court for

the Southern District of New York, he could not represent anyone beyond himself. (*See* CH Tr. at 10:14-15, 143:1-144:10.) Nonetheless, and despite the Bankruptcy Court's reservations that he may have "bought some standing in this case," the Court permitted Mr. Salsberg to actively participate in the hearing. (CH Tr. at 10:14-15, 62:10-15.) Mr. Salsberg was allowed a full opportunity to cross-examine and call witnesses: "You [Salsberg] had the opportunity to take discovery. You [Salsberg] had the opportunity to confront [Trico's expert witness] with facts and . . . you asked him to make a lot of assumptions which he did. You engaged in a very spirited cross-examination . . . ." (CH Tr. at 131:5-9.)

At the Confirmation Hearing, the Disclosure Statement was first approved as sufficient over Mr. Salsberg's objection. Specifically, the Bankruptcy Court held that the "methodology is described and that tells you what you have to know in order to make a determination in [Mr. Salsberg's] case [as a shareholder] not to vote for or against the plan because you don't get a vote but to make a judgment about the plan and you've made that judgment already." (*Id.* at 20:9-13.) Essentially, the court overruled Mr. Salsberg's objection because it was "satisfied that [the Disclosure Statement] contains more than adequate information." (*Id.* at 20:16-17.)

Trico then called Richard NeJame, a director in the restructuring advisory group at Lazard Freres, as its witness in support of the Plan. (August 23, 2007 Order at 6; CH Tr. at 30-63.) Mr. NeJame, who was qualified to testify as an expert in fields of valuation and restructuring (CH Tr. at 31:5-32:24), testified that he found, after an exhaustive analysis using the "comparable companies" and "discounted cash flow" methods, that Trico's total enterprise value as of the third quarter 2004 had fallen between $225 million and $245 million. (CH Tr. at 48:15-49:21.) If the absolute priority rule were thus applied, Mr. NeJame concluded, the

7

shareholders would receive nothing, *i.e.*, Trico was insolvent.  (August 23, 2007 Order at 7; *see also* CH Tr. at 60:11-61:2.)

        After Trico finished its direct case, Mr. Salsberg extensively cross-examined Mr. NeJame.  (CH Tr. at 63-116.)  In response to Mr. Salsberg's questions, Mr. NeJame testified that his analysis was based on the date in the Disclosure Statement, which included actual financials for the first three quarters of 2004 and projected results for the periods thereafter, including Q4 2004.  Mr. NeJame expressed no opinion as to Trico's value as of the date of the Confirmation Hearing. (August 23, 2007 Order at 7; *see also* CH Tr. at 84:6-85:5.)  At no point did Mr. NeJame state or represent that an additional $1.2 or $1.3 million in EBITDA in the fourth quarter of 2004 would make any difference in his analysis.  Instead, Mr. NeJame explained that "if you did outperform your plan in the next couple of years, what I believe that would reflect is a slight acceleration of the recovery that is forecasted.  It wouldn't reflect an upward shift to the entire forecast going forward."  (CH Tr. at 105:6-10; *see* August 23, 2007 Order at 7-8.)

        Unsatisfied with Mr. NeJame's testimony, Mr. Salsberg called Trico's then-current CFO, Trevor Turbidy, to testify.  (CH Tr. at 117-25.)  Mr. Salsberg began by asking Mr. Turbidy about Trico's Q4 2004 revenue, but because the information was preliminary and subject to finalization, Mr. Turbidy responded that Trico did not yet "have an estimate for that number."  (CH Tr. at 118:6-9, *see also* CH Tr. at 122:22-24; August 23 Order at 15; Trial Tr. at 25:13-19, 26:8-10, 54:6-13.)  Mr. Salsberg then asked for a preliminary estimate and Trico's counsel objected because the information was irrelevant to the Plan.  (CH Tr. at 119:15-120:21.) Indeed, neither Trico nor Mr. Turbidy was focused on revenue at the time of the Confirmation

Hearing.[2]  There were also concerns about Regulation FD.[3]  (*Id.* at 118-120; *see also* August

23, 2007 Order at 8.)

**Trevor Turbidy Answers Questions Regarding Trico's Q4 2004 Performance.**

        Nonetheless, the Bankruptcy Court overruled the objection and, after further

colloquy, proceeded to question Mr. Turbidy directly.  (CH Tr. at 121:6-123:1; *see also* August

23, 2007 Order at 8.)  The court first asked Mr. Turbidy about Trico's revenue, but then the court

asked Mr. Turbidy about Trico's "actual experience" for Q4 2004 as compared with the

projections.  (Trial Tr. at 121:22-122:13.)[4]  At the time of the Confirmation Hearing, Mr.

Turbidy had received information that suggested that Trico's Q4 2004 EBITDA was

preliminarily estimated to be approximately $5.3 million as compared to the projection of $4.1

million (Trial Tr. at 40:23-41:11).[5]  Accordingly, Mr. Turbidy gave the following testimony:

---

[2]    Trico was not focused on revenue during the reorganization process, but instead "focused primarily on cash flow from operations and our net changes in cash and cash equivalents in order to fund operations, maintain our fleet and service our debt."  (Ex. 48 at 23.)  Nor was Mr. Turbidy focused on Trico's revenue before or during the Confirmation Hearing.  (Trial Tr. at 23:24-24:1, 63:1-8.)  To Mr. Turbidy, revenue was irrelevant as a standalone number because it does not accurately reflect the financial health of a company (Trial Tr. at 63:9-13) and because it does not accurately reflect a company's ability to pay its bills:

> I don't think [revenue] was material in the fact that if you take it alone without the consideration of expenses . . . [it] doesn't give you the ability to service debt and the ability to repay our creditors.  So it's an indicator, but it's not an indicator of EBITDA, no, nor the ability for us to pay our debts.

(Trial Tr. at 87:7-14; *see also* Trial Tr. at 85:22-86:2.)

[3]    Regulation Fair Disclosure ("Regulation FD") prohibits certain non-public, or selective, disclosures of non-public information regarding an issuer or its securities.  17 C.F.R. § 243 (2005).

[4]    The Confirmation Hearing transcript reads "actual expense" rather than "actual experience," but the parties agreed that the question was transcribed incorrectly.  (Trial Tr. at 19:8-11; August 23 Order at 9, n.5.)

[5]    At the time of the Confirmation Hearing, Mr. Turbidy was aware that Trico's actual Q4 2004 EBITDA through November 2004 was approximately $5.3 million.  (Ex. 6 at TRM10871; Trial Tr. at 208:19-209:21.)  And because Mr. Turbidy thought Trico's EBITDA would be flat in December 2004 due to several expenses for that month, he understood that the total Q4 2004 EBITDA would be approximately $5.3 million.  (Trial Tr. at 102:16-19)

THE COURT: Do you recall whether your actual experience for the fourth quarter of 2004 was higher, lower, or consistent with the projected results?

THE WITNESS: In total, 2004 was consistent with our projections.

THE COURT: Just the last quarter?

THE WITNESS: It was fairly consistent, yes. It wasn't spot-on, dollar for dollar.

THE COURT: Is it higher or lower?

THE WITNESS: I believe it was slightly higher.

THE COURT: I'll take that answer, they higher - they did better than projected. I understand their concern by disclosing in a court, particularly a preliminary analysis, but they're saying they did better. I think that answers your question.

BY MR. SALSBERG:

Q. How much better?

A. Not materially.

(CH Tr. at 122:11-123:4.) Despite the fact that the Bankruptcy Court understood that Trico "did better" and despite the fact that the actual results for Q4 2004 were preliminary (CH Tr. at 122:21-24), and, in any event, irrelevant to Mr. NeJame's conclusions, it is this testimony that formed the basis of Appellants' case, including this appeal. (*See* August 23, 2007 Order at 9.)

**The Bankruptcy Court Confirms the Plan.**

At the conclusion of the Confirmation Hearing, the Bankruptcy Court overruled Mr. Salsberg's objection and approved the Plan. The court relied on Mr. NeJame's testimony, concluding that Trico was "hopelessly insolvent and . . . anything that equity gets in this case is a gift." The court did not mention Turbidy or his testimony in its decision. (CH Tr. at 136:20-137:3; August 23, 2007 Order at 9.) The Confirmation Order was signed on January 21, 2005.

Trico emerged from bankruptcy on March 15, 2005, the effective date of the Plan. (*See* August 23, 2007 Order at 6 and Ex. 61 at TR10.)

Pursuant to the Plan, Mr. Salsberg's shares of Trico stock, which were worth approximately $6,000 when he acquired them, were converted to warrants that are convertible to the shares in new Trico. (Ex. 61 at TR10.) As of the date of the last brokerage statement that Appellants produced in this matter (March 2007), those warrants were worth approximately $20,000. (Ex. M at TR75.)

**Mr. Salsberg Files an Advesary Action.**

Subsequent to the Confirmation Order, Mr. Salsberg neither appealed the order nor sought a stay of the effectiveness or implementation of the Plan. Instead, six months later, after Mr. Salsberg transferred some of his warrants distributed under the Plan to his mother, Gloria Salsberg, the Salsbergs (collectively, "Plaintiffs" or "Appellants") filed an Adversary Complaint seeking revocation of the confirmation of the Plan pursuant to 11 U.S.C. § 1144. The crux of Plaintiffs' claim was that Mr. Turbidy committed perjury when he testified about Trico's actual Q4 2004 results, and thus the confirmation order was procured by fraud. Because the order of confirmation was entirely consummated, Trico moved for a judgment on the pleadings. On January 6, 2006, and, again, on May 5, 2006, the Bankruptcy Court granted Trico's motion and found that the plan was so far along that it "would be exceedingly difficult to unwind and impossible to protect innocent third parties." (January 6, 2006 Order at 10.) The May 5, 2006 Opinion and Order allowed Plaintiffs leave to amend their complaint within thirty days (Bankr. Ct. Order dated May 5, 2006, ("May 5, 2006 Order"), at 15), and Plaintiffs filed an amended complaint on June 5, 2006 ("Amended Complaint") asserting two causes of action, "fraud on the court" and "fraud" under 11 U.S.C. § 1144.

On June 16, 2006, Plaintiffs moved to amend their Amended Complaint -- some 16 months after their original complaint -- to add Mr. Turbidy as a defendant ("Proposed Second Amended Complaint").  In a November 22, 2006 Opinion and Order, the Bankruptcy Court denied Plaintiffs' motion for leave to amend their Amended Complaint and dismissed their fraud on the court claim, citing two principal reasons: (a) Plaintiffs failed to allege in their Proposed Second Amended Complaint that Mr. Turbidy was an officer of the Court when he allegedly lied at the Confirmation Hearing; and (b) the Proposed Second Amended Complaint failed to allege that Mr. Salsberg had *no* opportunity to uncover Mr. Turbidy's alleged fraud. (November 22, 2006 Order at 11.)  As to the latter, the Bankruptcy Court held that Mr. Salsberg failed to conduct discovery before the Confirmation Hearing, and thus "was simply not prepared to meet Turbidy's allegedly false testimony." (*Id.* at 12.)  Plaintiffs' claim for damages pursuant to 11 U.S.C. § 1144, however, survived the Bankruptcy Court's analysis, and was, therefore, the only remaining cause of action.

Plaintiffs then requested a trial on the sole issue of whether Mr. Turbidy knowingly lied at the Confirmation Hearing about Trico's Q4 2004 performance with an intent to deceive.  (August 23, 2007 Order at 2.)  Plaintiffs reasoned that, if the Bankruptcy Court found that Mr. Turbidy did not lie, Plaintiffs could avoid a long, expensive trial.  (*Id.*)  Trico objected to bifurcation, but the Bankruptcy Court granted Plaintiffs' request, and a trial was held on May 21, 2007.

## The Bankruptcy Court Enters Judgment in Favor of Trico.

After hearing all the evidence and considering the parties' proposed findings of fact and conclusions of law, the Bankruptcy Court held in favor of Trico and dismissed the adversary proceeding.  In making its decision, the court found that Plaintiffs failed to show that Mr. Turbidy lied at the Confirmation Hearing when he testified that Trico's Q4 2004

performance was "slightly higher" but "not materially" better than projected.  (*Id.* at 16.)  The

court also held that Plaintiffs failed to show that Mr. Turbidy intended to deceive the court.  (*Id.*

at 18.)  In fact, the Bankruptcy Court found Mr. Turbidy to be "honest, candid and forthright."

(*Id.*)  Moreover, the court held that Plaintiffs failed to establish these elements under both the

"clear and convincing evidence" and "preponderance of the evidence" burdens of proof.  (*Id.* at

21.)[6]  On September 4, 2007, Plaintiffs filed their notice of appeal, which was docketed with this

Court on September 28, 2007.

## ARGUMENT

## I.    THE BANKRUPTCY COURT PROPERLY DISMISSED APPELLANTS' FRAUD CLAIM.

The Bankruptcy Court properly held that Appellants failed to show that Mr.

Turbidy knowingly misrepresented Trico's Q4 2004 performance with an intent to deceive.  (*See*

August 23, 2007 Order at 14-21.)

### A.    Mr. Turbidy Testified About EBITDA.

Appellants maintain that Mr. Turbidy was testifying about revenue at the

Confirmation Hearing, but the Bankruptcy Court properly found that Mr. Turbidy testified about

EBITDA.  Initially, Mr. Turbidy was asked about Trico's revenue, but after a colloquy, the

Bankruptcy Court asked him about Trico's "actual [Q4 2004] experience" as compared to the

---

[6]    The correct burden of proof on Plaintiffs'/Appellants' claim was clear and convincing evidence because Appellants' claim was tantamount to an action for common law fraud independent of 11 U.S.C. § 1144.  *See, e.g., Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 971 (2d Cir. 1987); *Evans v. Ottimo*, 469 F.3d 287 (2d Cir. 2006).  Appellants argued that preponderance of the evidence was the correct standard, but they relied solely on an inapposite case, *Tenn-Fla Partners v. First Union Nat'l Bank*, 229 B.R. 720, 729 (W.D. Tenn. 1999).  While *Tenn-Fla Partners* discusses burden of proof in reference to plaintiffs seeking to revoke a confirmed plan under § 1144, in this case the claim for revocation had already been dismissed.  (May 5, 2006 Order at 15.)  Thus, Appellants were solely pursuing a claim for damages and Appellants acknowledged as much.  (Trial Tr. at 14:20-15:15.)  Thus, the burden of proof for Appellants' claim was clear and convincing evidence.  *See, e.g., Katara*, 835 F.2d at 971.

projected results. "The questions," the court acknowledged, "were admittedly vague" (August 23, 2007 Order at 15) but Mr. Turbidy understood the question regarding Trico's "actual experience" to refer to the company's financial health, and EBITDA, not revenue, directly reflected Trico's financial health and ability to pay its bills. "More [than revenue], EBITDA was important to the restructuring," Mr. Turbidy explained, as "[t]hat was our ability to pay the bills, which is why we focused on direct expenses and talking about EBITDA and free cash flow." (Trial Tr. at 44:17-19.) Mr. Salsberg even admitted that Mr. Turbidy's testimony at the Confirmation Hearing was "not clearly about revenue" (Trial Tr. at 169:8-9) and Appellants conceded in their Amended Complaint that Mr. Turbidy's statements concerned Trico's "performance" and "financial prospects." (Am. Compl. at ¶¶ 34 and 36, June 5, 2006.)

Additionally, Trico's 2004 10K, published after the Confirmation Hearing, supports Mr. Turbidy's explanation of the importance of EBITDA: "As our reorganization progressed in 2004, we [Trico] focused primarily on cash flow from operations and our net changes in cash and cash equivalents in order to fund operations, maintain our fleet and service our debt" (Ex. 48 at 23), which is best approximated by EBITDA, not revenue. (*See* August 23, 2007 Order at 15-16.) Accordingly, the Bankruptcy Court found Mr. Turbidy's testimony to be "honest, candid and forthright." (August 23, 2007 Order at 18.)

Appellants now seem to argue that Mr. Turbidy "may have been confused" about whether he was being asked about revenue or EBITDA (Appellants' Br. at 13-14), but there is nothing in the record to support that contention. Indeed, it was clear to Mr. Turbidy that he was asked about EBITDA: "The Court asked me a question about the financial health of the company," Mr. Turbidy testified. "And when I think of that, I think of EBITDA. It's our ability to pay debts and interest expense." (Trial Tr. at 94:20-22; *see also* Trial Tr. 142:18-23.)

Accordingly, the Bankruptcy Court's determination that Mr. Turbidy was testifying about EBITDA should be affirmed.

**B.    <u>Mr. Turbidy Told the Truth Regarding Trico's Q4 2004 EBITDA.</u>**

The Bankruptcy Court properly held that Mr. Turbidy told the truth regarding Trico's Q4 2004 EBITDA.  At the time of the Confirmation Hearing, Mr. Turbidy was aware that Trico's Q4 2004 EBITDA through November 2004 was estimated to be approximately $5.3 million.  (Ex. 6 at TRM10871; Trial Tr. at 208:19-209:21.)  And Mr. Turbidy thought Trico's EBITDA would be flat in December 2004.  (Trial Tr. at 102:16-19.)  Thus, Mr. Turbidy preliminarily understood that Trico's Q4 2004 EBITDA was approximately $5.3 million as compared to $4.1 million projected (Trial Tr. at 40:23-41:11).[7]

Accordingly, Mr. Turbidy testified that Trico's preliminary Q4 2004 EBITDA was "fairly consistent" with projections, but it "wasn't spot-on, dollar for dollar," and was "slightly" but "not materially" higher than projected.  (CH Tr. at 122:14-123:4.)  This makes sense when viewed in light of Trico's financial situation at the time of the Confirmation Hearing. Mr. Turbidy considered the $1.2 million increase in EBITDA in a single quarter no more than a proverbial drop in a bucket -- as Appellants recognize (Appellants' Br. at 16 (in Mr. Turbidy's view, "it was just a drop in a very large bucket.")).  Trico had nearly $400 million of debt (Disclosure Statement at I-8), $32 million in projected annual interest expense (*Id.* at Ex. C, at 7), and projected EBITDA of $13.6 million for the full year 2004 (*Id.*).  Thus, an additional $1.2 million of EBITDA in one quarter was a very modest increase and not meaningful when viewed

---

[7]    Appellants state that Trico's actual Q4 2004 EBITDA was $5.4 million, but Mr. Turbidy could not have known Trico's actual EBITDA on January 19, 2005 -- the day of the Confirmation Hearing.  Trico's Q4 2004 EBITDA was yet to be finalized at that time.  (Trial Tr. at 63:14-24.)

in light of Trico's obligations.  As the Bankruptcy Court held, "[Mr. Turbidy] was referring to Trico's EBITDA in relation to Trico's overall valuation based upon his understanding that the purpose of the hearing was to determine the valuation of Trico . . . a company teetering on the brink of survival."  (August 23, 2007 Order at 16.)  Indeed, the Bankruptcy Court held that Trico was "hopelessly insolvent." (CH Tr. at 137:3).  Further, Trico's fourth quarter and annual results for 2004, published after the Confirmation Hearing, confirmed what the court described as Trico's "bleak financial prospects."  (August 23, 2007 Order at 17.)  The Bankruptcy Court therefore properly held that Mr. Turbidy's Confirmation Hearing testimony accurately contextualized Trico's Q4 2004 performance against the larger picture of Trico's dire financial condition.  (*Id.* at 16-18.)

Appellants also argue that Mr. Turbidy's testimony was false because he did not explain that certain expenses that Trico incurred in December 2004 ("December 2004 Expenses") reduced Trico's Q4 2004 EBITDA.  (Appellants' Br. at 13.)  However, it is undisputed that each these expenses was properly accounted for in Q4 2004 and did, in fact, reduce Trico's EBITDA.  (*See* Ex. 9 at TRM10835; Ex. 48 at 76; *see also* Trial Tr. at 74:4-5 (Bankruptcy Court stated that the UK pension expense irrefutably reduced Trico's Q4 2004 EBITDA).)  Accordingly, the Bankruptcy Court held that "the EBITDA was accurately stated." (August 23, 2007 Order at 19.)  Indeed, there is no evidence -- and the Appellants do not even argue -- that Trico engaged in any accounting improprieties.  (*Id.*)  Therefore, Appellants' argument is really that Mr. Turbidy should have added these expenses back into Trico's EBITDA to manufacture some new hybrid EBITDA (Appellants' Br. at 13), but that hybrid EBITDA would have been a meaningless number because it no longer reflects Trico's ability to pay its bills.  Thus, the Bankruptcy Court properly held that it was appropriate for Mr. Turbidy to

have testified regarding Trico's Q4 2004 EBITDA without adding back these expenses.  (August 23, 2007 Order at 19.)[8]

As further evidence that Mr. Turbidy told the truth, the Bankruptcy Court, when it was ruling on the Plan, essentially stated that it understood that Trico outperformed its projection for the quarter: "I'll take that answer . . . they did better than they projected.  I understand their concern about disclosing in a court, particularly a preliminary analysis, but they're saying they did better.  I think that answers your question."  (CH Tr. at 122:21-123:1.)  *Cf. In re Michelson*, 141 B.R. 715, 722 (Bankr. E.D. Cal. 1992) ("It is quite another thing to allow a court to be misled in the exercise of its duty to make an informed, independent judgment.").

Appellants also argue at length that recklessness is sufficient to support a claim of fraud (Appellants' Br. at 14-17), but that misses the point.  Here, there is no evidence that Mr. Turbidy was unaware of Trico's preliminary EBITDA for Q4 2004.  Instead, he explained that he was aware of the preliminary EBITDA at the Confirmation Hearing and that he testified at that hearing in accordance with his understanding.  (Trial Tr. 101:8-102:7; *see also* Trial Tr. at 40:23-41:11.)  Thus, Appellants' reliance on this caselaw is misplaced.  *See, e.g., Diorio v. Kreisler-Borg Constr. Co.*, 297 F. Supp. 842, 846 (S.D.N.Y. 1968) ("In these circumstances, the Court concludes that there were reasonable grounds to believe that the bankrupt knowingly and

---

[8]    Appellants emphasize that these expenses -- which include a $1.5 million inventory reserve expense ("Inventory Reserve"), a $0.7 million UK redundancy reserve ("Redundancy Reserve"), and a $2.7 million UK pension expense ("Pension Expense") -- were "unusual," but this is wrong.  If the expenses were unusual, Trico would have listed them as a separate line item in its financial statements, but it did not do so.  (Trial Tr. at 75:1-6; Ex. 48.)  In fact, only one of the expenses, Trico's Pension Expense, is even mentioned in Trico's 2004 10K. (Ex. 48.)  And that expense has occurred every year since December 2004.  (Trial Tr. at 115:22-116:4; *see also* Trial Tr. at 116:12-14; Ex. 49 at 79; Ex. 55 at 78; Trial Tr. at 116:2-4.)  Moreover, although Mr. Turbidy believed that the Pension Expense was not included in the projections, there is no evidence that the Inventory Reserve and the Redundancy Reserve were not in the projections.  (Trial Tr. at 71:10-18; *see also* August 23, 2007 Order at 19-20.)

fraudulently made the false affidavit and that, therefore, the burden of proof on the issue of whether the false affidavit was knowingly and fraudulently made was on the bankrupt. In view of the failure of the bankrupt to testify or present any other evidence to explain the false affidavit, it was clearly erroneous to find that the making of the false affidavit was inadvertent.") (citation omitted), *affd.*, 407 F.2d 1330 (2d Cir. 1969).

The best example of Appellants' misplaced reliance on this caselaw is the case upon which Appellants primarily rely. *S.E.C. v. Platinum Inv. Corp.*, No. 02 Civ. 6093, 2006 WL 2707319 (S.D.N.Y. Sept. 20, 2006). In *Platinum Inv*., the Securities and Exchange Commission brought an action against a broker pursuant to federal securities laws because the broker had made material misrepresentations to his client. Specifically, the broker represented that a publicly-traded company would, among other things, be conducting an initial public offering at a price of $3.50 per share, and the shares could rise as high as $8 or $9 per share. *Id.* at *2. At summary judgment, the broker ***did not dispute*** that each of his representations was "ultimately untrue" and he "acknowledge[d] that he did nothing to confirm his price or performance predictions" despite his duty as a broker to investigate securities prior to recommending them to a client. *Id.* at *3 (citing *Hanly v. S.E.C.*, 415 F.2d 589, 596 (2d Cir.1969)).

Contrary to the statements of the broker in *Platinum Inv.*, Mr. Turbidy's statements were, each, ultimately true. Indeed, at the time of the hearing, Mr. Turbidy believed the Q4 2004 EBITDA to be approximately $5.3 million, which was not "spot-on, dollar for dollar," but was "consistent" with the $4.1 projected amount. (Trial Tr. at 134:4-11.) Likewise, the Q4 2004 results were "slightly," but not "materially" higher than projected. (Trial Tr. at 134:12-135:4.) This was all true as the actual Q4 2004 EBITDA, at $5.4 million, turned out to

18

be very close to Mr. Turbidy's estimate, and the difference between Trico's actual Q4 2004 EBITDA and the projections did not meaningfully alter Trico's ability to pay its bills. Trico was still hopelessly insolvent, and Plaintiffs have submitted no evidence contradicting this fact. Thus, where the broker in *Platinum Inv.* made a number of misrepresentations, Mr. Turbidy made none.[9]  For all of these reasons, Mr. Turbidy did not lie at the Confirmation Hearing.

### C.    Mr. Turbidy Had No Motive to Lie.

Appellants theorize that Mr. Turbidy and Trico conspired to hide positive results that would have called into question whether Trico needed to reorganize, but this argument makes no sense. It is also unsupportable. There is simply no evidence that Trico's Q4 2004 revenue, the additional $1.2 million in EBITDA for Q4 2004, or the so-called "special" expenses would have had any effect on the Plan or the fact that Trico needed to reorganize. (*Cf.* CH Tr. at 83:23-84:9 (Mr. NeJame unequivocally testified that his analysis was based only on projections after the third quarter of 2004).)  More to the point, Appellants failed to offer any evidence that Mr. Turbidy believed that this information would have any affect on the Plan.

---

[9]    None of the cases upon which Appellants rely support the conclusion that Mr. Turbidy lied. *Cf. In Re Tully*, 818 F.2d 106, 110-11 (1st Cir. 1987) ("knowing and fraudulent" omission of "indubitably material" information supports a fraud claim);  *In re Devers*, 759 F.2d 751, 754 (9th Cir. 1985) (intent to deceive was found as a result of "Debtors' blatant violation of the court's order to cease commingling the money earned from these sales.");  *In re M.T.G., Inc.*, No. 95-48268, 2007 WL 1119672, at *16 (Bankr. E.D. Mich. Apr. 16, 2007) (failure to disclose a fee agreement that proved several representations made by party and his attorneys to be false "created a substantial and unjustifiable risk of harm to integrity of the judicial process" and supported a fraud claim); *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996) ("facts alleged to support recklessness must be 'strong circumstantial evidence' of that recklessness"); *In re Reisman*, 149 B.R. 31, 38 (Bankr. S.D.N.Y. 1993) (recklessness sufficient to support a fraud claim);  *E*Trade Fin. Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273, 289 n.3 (S.D.N.Y. 2006) (same);  *Rolf v. Blythe, Eastman Dillon & Co., Inc.*, 570 F.2d 38, 47-48 (2d Cir. 1978) ("representations and opinions [that] were given without basis and in reckless disregard of their truth or falsity" supports a securities fraud claim); *In re Bonnanzio*, 91 F.3d 296, 301 (2d Cir. 1996) (there was no "constructive intent to deceive" based on recklessness); *State Street Trust Co. v. Ernst*, 15 N.E.2d 416, 418-19 (N.Y. 1938) (accountants may be liable to third-parties when they act recklessly); *Caprer v. Nussbaum*, 825 N.Y.S.2d 55, 71-72 (N.Y. App. Div. 2006) (same).

On the other hand, there is extensive evidence in the record to support the conclusion that one quarter's performance would not have made a meaningful difference to the Plan and that Mr. Turbidy understood as much.  Mr. Turbidy explained that he did not understand one quarter's performance to be a predictor of a future quarter's performance: "EBITDA in any particular quarter isn't necessarily indicative of anything because a lot of our business is done in the spot market, meaning that what vessels earn in that market at that time. So you can't necessarily create a trend from that."  (Trial Tr. at 87:23-88:2; *see also* Disclosure Statement at I-49; Ex. 48 at 16.)  Likewise, Mr. NeJame, the expert witness who testified that the Plan was fair based on actual results only through the third quarter of 2004, explained that even if Trico "did outperform your plan in the next couple of years, what I believe that would reflect is a slight acceleration of the recovery that is forecasted.  It wouldn't reflect an upward shift to the entire forecast going forward."  (CH Tr. at 105:6-10; *see also* CH Tr. at 84:13-16.)  Trico's 2004 10K also states that performance in any one quarter is not a reliable indicator of future performance: "the results of any one quarter are not necessarily indicative of annual results or continuing trends."  (Ex. 48 at 16; *see also* Disclosure Statement at I-49.)  Simply put, there is nothing to suggest that the Q4 2004 results, even if viewed through rose-colored glasses, would have affected the Plan or Trico's prospects in the bankruptcy.

Despite this uncontroverted evidence, Appellants now argue that Trico was, in fact, solvent at the time of the Confirmation Hearing. (Appellants' Br. at 21).  Appellants' argument has no basis.  The Bankruptcy Court concluded, when it confirmed the Plan, that Trico was "hopelessly insolvent."  (August 23, 2007 Order at 9; CH Tr. at 137:3).  In doing so, the court found that Trico had $470 million in debt.  (CH Tr. at 136:2-7).  Further, while Appellants challenge the Court's determination that Trico had negative equity of $240 million (August 23,

2007 Order at 17-18; *see also* CH Tr. at 132:8-18), they at the same time admit that Trico had *at least* $164 million in negative equity.  (Appellants' Br. at 24-25).  Accordingly, Appellants essentially concede that Trico needed at least $164 million in additional value to be solvent.[10]

And the concession that Trico had more than $160 million in negative equity also means that an additional $1.2 million in EBITDA would not have made any difference whatsoever.  As the Bankruptcy Court observed, even if the $2.7 million Pension Expense were added back to the Q4 2004 EBITDA, the resulting EBITDA would still be insufficient to meet Trico's obligations:

> [A]n increase of $2.7 million in fourth quarter EBITDA would have been insufficient to cover the $9 million quarterly interest expense or the $19 million annual shortfall in the interest expense on the Senior Notes, and there is no evidence that it would have made a dent in the over $200 million in negative equity.  (August 23, 2007 Order at 20.)

Moreover, all of Appellants' theoretical calculations ignore relevant information, including the actual results for the first three quarters of 2004.  (Appellants' Br. at 22-24.)  Thus, Appellants' calculations are meaningless.  In sum, the Bankruptcy Court properly held that Mr. Turbidy had "no intent to deceive the Court or anyone else."  (August 23, 2007 Order at 18.)[11]

---

[10]  Appellants take issue with the Bankruptcy Court's finding that Trico had $240 million in negative equity.  At the outset, it is not clear how the Bankruptcy Court's finding that Trico's negative equity was $240 million as compared to $164 million is in any way relevant to the question before this Court.  Nevertheless, Appellants have not satisfied their steep burden of proving that the Bankruptcy Court erred by not finding that Trico's negative equity was $164 million (Appellants' Br. at 25).  As Appellants note, the term "negative equity" means the "shortfall in Trico's value as compared to the amount of Trico's debt obligations." (*Id.* at 24.)  In arriving at $164 million, Appellants ignore all of Trico's debt obligations beyond Trico's Senior Notes, which total $275 million and, yet, the Disclosure Statement states that Trico's total pre-restructuring indebtedness was $389.  (August 23, 2007 Order at 6; Disclosure Statement at I-8).  Because Appellants failed to include all of Trico's debt obligations, Appellants failed to carry their burden, and therefore, this argument also fails as a matter of fact.

[11]  In their brief, Appellants raise a number of additional arguments regarding the Bankruptcy Court's decision, but none has any merit.  (Appellants' Br. at 25-30.)  First, Appellants criticize the Bankruptcy Court for saying that Trico's 2004 quarterly interest expense was $9 million (August 23, 2007 Order at 16, 20) when in fact it was $7.6 million, but their criticism is misplaced.  To begin with, Appellants cite a monthly report that only has preliminary numbers.  (Ex. 12.)  Moreover, Trico's total interest expense for 2004 was $33.4 million such that

(Continued…)

### D.    There Was No Duty to Disclose any Additional Information.

Appellants now assert a new argument regarding Trico's preliminary Q4 2004 revenue and expenses.    Indeed, contrary to their position at trial -- "[n]or need the Court determine that Mr. Turbidy had an affirmative, independent obligation to disclose" because the disclosure "obligation" arises as a result of Mr. Turbidy's "'answering' specific questions" (Plaintiffs' Reply Proposed Conclusions of Law dated July 31, 2007, at 8) -- Appellants now argue that Mr. Turbidy had an independent obligation to disclose preliminary information regarding Q4 2004.  This new argument fails for a number of reasons.

#### 1.    Appellants' New Argument Should Be Dismissed Because Appellants Failed to Raise the Argument Below.

Appellants' new argument fails because it is well-established that an appellate court will not consider an issue raised for the first time on appeal.  *See Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 79-80 (2d Cir. 1999); *O'Hara*, 294 F.3d at 67 ("[E]ven if raised in the district court, '[n]ormally, we will not consider arguments raised for the first time [on appeal] in a reply brief'") (quoting *Keefe v. Shalala*, 71 F.3d 1060, 1066 n. 2 (2d Cir. 1995)); *Fortunato*

---

its interest expense per quarter in 2004 was approximately $8.4 million.  (*See* Ex. 48 at 43; see also Ex. 12 at TRM10810.)  Further, the Bankruptcy Court was explaining Mr. Turbidy's viewpoint regarding Trico's Q4 2004 performance at the time of the Confirmation Hearing, and he remembered the quarterly interest expense to be approximately $9 million.  (August 23, 2007 Order at 16; see also Trial Tr. at 101:21-102:7.)  Second, the Bankruptcy Court properly found that adding back the $2.7 million UK pension expense still would not have covered Trico's $19 million annual shortfall in the interest expense on the Senior Notes.  Appellants argue that Trico's increased Q4 2004 performance somehow presaged the improvement of its overall financial position, but neither Trico nor Mr. Turbidy understood one quarter's performance to reliably indicate future performance. (*See* Disclosure Statement at I-49; Ex. 48 at 16; Trial Tr. at 87:23-88:2.)  Third, the Bankruptcy Court properly found that Appellants failed to present evidence that the $1.5 million Inventory Reserve was not included in Trico's Q4 2004 projections.  Indeed, Mr. Turbidy testified that, to his knowledge, only the UK pension expense was not considered in the projections.  (Trial Tr. at 71:10-18; August 23, 2007 Order at 19-20.)  Fourth, the court did not ignore the Inventory Reserve or the $0.7 million Redundancy Reserve in its analysis.  Putting aside the fact that all the December 2004 expenses were properly deducted from the Q4 2004 EBITDA (August 23, 2007 Order at 19), the court acknowledged the fact that Mr. Turbidy foresaw the Inventory Reserve, but like the Pension Expense, the court did not view the expense as material in light of Trico's dire financial condition. (See August 23, 2007 Order at 19-20.)  Moreover, Mr. Turbidy was not even aware of the Redundancy Reserve at the Confirmation Hearing. (Trial Tr. at 34:3-22; *see also id.* at 19.)

*v. Ford Motor Co.*, 464 F.2d 962, 967 (2d Cir. 1972) (holding that an appellate court will not

hear new arguments on appeal because "[t]o do so would allow a party to obtain a new trial

simply on its claim that it would have proven a certain fact or facts had it been given a chance.");

*Gurary v. Winehouse*, 190 F.3d 37, 44 (2d Cir. 1999) ("Having failed to make the present

argument to the district court, plaintiff will not be heard to advance it here.").  For this reason

alone, Appellants' new argument should be dismissed out of hand.

> 2.    Appellants' New Argument Fails as a Matter of Law Because the
>        Information Was Irrelevant to the Plan.

Appellants' new argument also fails because the information that Appellants

contend should have been disclosed was irrelevant to the Plan.  Courts have permitted an

inference of fraud to be drawn when a plan proponent fails to disclose important, material

information in connection with obtaining confirmation of a plan.  *See, e.g., Michelson,* 141 B.R.

at 725; *In re Tenn-Fla Partners*, 170 B.R. 946, 967 (Bankr. W.D. Tenn. 1994), *aff'd in relevant

part*, 229 B.R. 720 (W.D. Tenn. 1999), *aff'd*, 226 F.3d 746 (6th Cir. 2000).  For example, in

*Michelson*, the plan emphasized the importance of the new financial manager, Raymond

Whitehead, as a "key man" whose continued employment for five years after confirmation was  a

"means" for implementing the plan.  Debtors failed to disclose the fact that Whitehead faced a

possibility of incarceration, which, among other things, cast doubt upon his ability to stay with

the debtor.  Moreover, the debtors failed to disclose that Mr. Whitehead was responsible for the

failure of a previous business.  The court held that these omissions from the disclosure statement,

under an objective standard, were important and material because they went to the question of

whether there were "adequate means for the plan's implementation."  *Michelson,* 141 B.R. at 727

(citing 11 U.S.C. § 1129(a)(5)).  Similarly, in *Tenn-Fla Partners* the debtor's intentional failure

to disclose the existence of highly interested and qualified purchasers of the debtor's sole asset in

the disclosure statement amounted to fraud such that the court revoked the confirmation order. *Tenn-Fla Partners*, 170 B.R. at 972.

As opposed to *Michelson* and *Tenn-Fla Partners*, the alleged omissions here involve information about Q4 2004 preliminary results, including certain Q4 2004 expenses, that was irrelevant to the Plan.  Simply put, the Q4 2004 results were irrelevant to the Plan.  (*See, e.g.,* CH Tr. at 105:6-10; *see also* CH Tr. at 84:13-16.)  Further, Appellants never argued at trial that the expenses had any affect on the Plan:  "[n]or do Plaintiffs argue, or have to argue, that the disclosure of those unusually large special charges would have magically altered the Court's conclusion that the plan of reorganization should be approved" (Plaintiffs' Reply Proposed Conclusions of Law dated July 31, 2007, at 5.)  Thus, there is no basis for Appellants to now argue that the Q4 2004 information was material to the Plan.  For all of these reasons, there was no need to disclose this information to the Bankruptcy Court and Appellants' claim was properly dismissed.[12]

3.    Appellants' New Argument Fails Because Appellants Failed to Appeal the Ruling that the Disclosure Statement Was Adequate.

There is another independent reason that Appellants' argument fails.  Appellants are, essentially, challenging the adequacy of the Disclosure Statement and the Bankruptcy Court already ruled that the Disclosure Statement was more than adequate.  (CH Tr. at 20:15-18.)  At the Confirmation Hearing, Mr. Salsberg objected to the Disclosure Statement:

---

[12]  Appellants cite caselaw regarding materiality under federal securities laws for the proposition that information that "reasonable investor would consider it important in deciding whether to make an investment" should have been disclosed, but that caselaw is inapposite.   (Appellants' Br. at 18 (citing *Commodity Futures Trading Com'n v. R.J. Fitzgerald & Co., Inc.*, 310 F.3d 1321, 1328-29 (11th Cir. 2002) and *Commodity Futures Trading Com'n v. Commodity Inv. Group, Inc.*, No. 05-CV-5741, 2007 WL 1519002, at *7 (S.D.N.Y. Feb. 27, 2007).)  There is no "investor" in this situation.  Instead, the question is whether information material to the Plan was disclosed such that the Bankruptcy Court could make an informed determination that the Plan was fair.

> MR. SALSBERG:  Basically the disclosure statement seems to be -- I mean it may be what you normally do, but in this case for me it's just not enough for me to do the kind of work that I would want to do to make a determination on my own and I'm left in the dark until today when you want to confirm the plan.  How can I --
>
> THE COURT:  Talk to me, Mr. Salsberg.
>
> MR. SALSBERG:  I'm sorry.  How can I do the work that I have to do to see if it's fair for the shareholders, fair for me if the information isn't there.

(*Id.* at 17:1-10.)  The Court overruled Mr. Salsberg's objection and held that the "methodology is described and that tells you what you have to know in order to make a determination in [Mr. Salsberg's] case [as a shareholder] not to vote for or against the plan because you don't get a vote but to make a judgment about the plan and you've made that judgment already." (*Id.* at 20:9-13.)  This Court went on to hold that it was "satisfied that [the Disclosure Statement] contains more than adequate information." (*Id.* at 20:16-17.)  Mr. Salsberg never appealed this ruling and, thus, Appellants cannot collaterally attack the Court's ruling that Trico's Disclosure Statement was adequate. *See In re Public Serv. Co. of New Hampshire*, 43 F.3d 763, 767-68 (1st Cir. 1995) (attacks made on the disclosure statement after the confirmation hearing "were in part made in the reorganization proceeding itself; and, to the extent that they were not made there, they could and (if meritorious) should have been made there" and that "allowing such an attack [thereafter] would disrupt Congress' detailed scheme for approval of disclosure statements and reorganizations, and would frustrate the proper administration of the Bankruptcy Code."); *see also In re California Litfunding*, 360 B.R. 310, 319-20 (Bankr. C.D. Cal. 2007).

## E.    Appellants' Fraud Claim Failed for Three Additional, Independent Reasons.

So long as the Court finds that the Bankruptcy Court was not clearly erroneous when it concluded that Mr. Turbidy told the truth, this Court need not proceed.  Nonetheless, there are three additional, independent bases for dismissing the fraud claim: (i) Appellants' claim

did not involve serious allegations of fraud; (ii) Appellants had ample opportunity to uncover

Mr. Turbidy's alleged fraud at the Confirmation Hearing; and (iii) Appellants' claim sought to

"redivide the pie."

    1.    <u>Appellants' Fraud Claim Failed Because It Did Not Involve Severe Allegations of Fraud.</u>

Appellants' claim failed because it did not involve severe enough allegations of

fraud.  An independent action for damages in connection with a confirmation order is rarely

permitted after an 11 U.S.C. § 1144 claim for revocation has been dismissed.  *See In re Coffee

Cupboard, Inc.*, 119 B.R. 14, 19 (E.D.N.Y. 1990).  Not only is it rare that a court will allow a

related claim for damages to proceed following the dismissal of an 11 U.S.C. § 1144 revocation

claim, but a number of courts have held that revocation of a confirmation order is the ***sole***

remedy for any alleged misrepresentations or omissions in connection with a confirmation

proceeding.  *See, e.g., Hotel Corp. of the South v. Rampart 920, Inc.*, 46 B.R. 758, 770-71 (E.D.

La. 1985), *aff'd*, 781 F.2d 901 (5th Cir. 1986) ("To allow Plaintiffs to collaterally attack the

Bankruptcy reorganization on grounds of fraud is to allow them to do indirectly what they no

longer may do directly because of 11 U.S.C. § 1144" such that claims of fraud "are precluded by

11 U.S.C. § 1144.")

    When such claims are allowed to proceed, they invariably comprise allegations of

fraud that are dramatically more severe than what Appellants alleged here.  *See Coffee

Cupboard*, 119 B.R. at 15-16; *In re Emmer Bros. Co.*, 52 B.R. 385, 388 (D. Minn. 1985)

(plaintiffs alleged that debtor willfully concealed its interest in a class action antitrust suit from

the plaintiffs and bankruptcy court -- a separate and distinct asset that was neither included in the

disclosure statement nor the plan of reorganization).  In *Coffee Cupboard*, for example, plaintiffs

alleged that debtors made false filings, committed perjury throughout debtor's arrangement

proceedings, and concealed key assets from the bankruptcy court, particularly its ownership of 6,425,000 controlling shares of another company, whose name debtor even changed to ensure concealment. *Coffee Cupboard*, 119 B.R. at 16-17.

Contrary to the plaintiffs in *Coffee Cupboard*, Appellants did not allege that Mr. Turbidy concealed an asset from the Court. Instead, Appellants argued that Mr. Turbidy failed to adequately portray Trico's Q4 2004 revenue and EBITDA, the projections of which Appellants admitted were disclosed in the Disclosure Statement. (*See* Plaintiffs' Proposed Findings of Fact at ¶¶ 4, 5, 7.) Given that it was undisputed that (a) Lazard's valuation of Trico was not based on Trico's actual performance in Q4 2004 (CH Tr. at 136-37, 83-84); (b) Trico's financial projections were valid at the time they were made (Disclosure Statement at I-54); and (c) Mr. Turbidy was forthright in stating that his testimony about Trico's Q4 2004 performance was based on preliminary information (CH tr. at 118:8-9, 122:22-24), Appellants' allegations did not come close to the level of fraud alleged in any case in which a court has allowed a damages claim to survive the dismissal of an 11 U.S.C. § 1144 claim. Appellants' fraud claim, therefore, should be dismissed for this reason alone.

2.     Appellants' Claim Failed Because They Had Opportunity to Uncover Mr. Turbidy's Alleged Fraud.

Appellants' claim also failed because Mr. Salsberg had the opportunity to uncover Mr. Turbidy's alleged fraud. Courts that have found res judicata and/or collateral estoppel to preclude an action for damages in connection with a confirmation order require a plaintiff to prove that: (a) the underlying factual claim was not actually adjudicated; (b) the alleged fraud could not have been asserted in the bankruptcy proceedings; and (c) the relief would not upset the confirmed plan of arrangement. *See, e.g., In re Newport Harbor Assocs.*, 589 F.2d 20, 24 (1st Cir. 1978); *California Litfunding*, 360 B.R. at 318; *accord Coffee Cupboard*, 119 B.R. at 19.

More simply, plaintiffs may not renew their attack on a confirmation order by merely re-characterizing the attempt as an independent cause of action. The cause of action must be "truly independent." *Coffee Cupboard*, 119 B.R at 19.

Because Appellants had the opportunity to uncover Mr. Turbidy's alleged fraud at the Confirmation Hearing, their damages claim was not "truly independent" of their claim for revocation under 11 U.S.C. § 1144, and thus failed as a matter of law. *See California Litfunding*, 360 B.R. at 319 ("The information giving rise to the purported fraud was available to the Plaintiffs and they could have (and should have) conducted their due diligence and investigated the accuracy (or inaccuracy) of the statements made in or omitted from the Disclosure Statement."). Here, "Steven raised the issue of the actual fourth quarter results during his interrogation of Turbidy, who he called as his own witness, and had the chance to expose his [alleged] lies." (November 22, 2006 Order at 11-12.) Mr. Salsberg was not prepared to deal with Mr. Turbidy's allegedly false testimony, a problem that Mr. Salsberg expressly admitted would have been prevented if only he had conducted pre-Confirmation Hearing discovery. (Trial Tr. at 202:10-13; c*f. id.* at 12 ("He [Mr. Salsberg] was simply not prepared to meet Turbidy's allegedly false testimony.").) Accordingly, Appellants did not have a "truly independent" damages claim and, thus, it failed as a matter of law. *See California Litfunding*, 360 B.R. at 318-19; *see also Public Serv. Co. of New Hampshire*, 43 F.3d at 768 (affirming a bankruptcy court's injunction barring a civil action for fraud that allegedly occurred in a Chapter 11 proceeding "[b]ecause the alleged inaccuracies could have been, and in part were, litigated in the bankruptcy court.").

3.     Appellants' Claim Failed Because It Sought to "Redivide the Pie."

Appellants' claim also failed because it merely sought to "redivide the pie."
Where a plaintiff asserts a private cause of action in connection with an order of confirmation
and seeks to "redivide the pie" by seeking "significant money damages," that remedy is
precluded as a matter of law by 11 U.S.C. § 1144.  *See, e.g, Coffee Cupboard*, 119 B.R. at 19.  In
fact, courts dismiss claims in connection with a confirmation order apart from a claim for
revocation, where "the impact of a significant money damages award against the debtor would
be to 'redivide the pie', to upset the confirmed plan, and to negatively affect innocent parties and
creditors who received value in the forms of new equity and new debt in the reorganized debtor."
*In re Genesis Health Ventures, Inc.*, 324 B.R. 510, 517 (Bankr. D. Del. 2005), *aff'd in relevant
part*, 340 B.R. 729, 733 (D. Del. 2006); *see also Coffee Cupboard*, 119 B.R. at 19; *Emmer Bros.*,
52 B.R. at 392; *California Litfunding*, 360 B.R. at 320-21.  Because the payment of damages by
Trico would have, effectively, "redivide[d] the pie" by draining Defendants' assets to the
detriment of their creditors, Appellants had no independent claim for fraud here.  *See, e.g.,
Genesis Health*, 324 B.R. at 517.

Nor did Appellants allege or show that a separate asset was omitted from Trico's
Plan of Reorganization, which is the only circumstance in which courts have permitted a claim
for damages to follow the dismissal of a claim for revocation under 11 U.S.C. § 1144.  *See, e.g.,
Emmer Bros.*, 52 B.R. at 392.  Here, there was no allegation whatsoever that "an additional asset
that did not figure in to the reorganization plan" was concealed.  *Id.*  At most, Appellants argued
that a characteristic of Trico's financial prospects in a particular period -- Trico's fourth quarter
results -- was not adequately disclosed and, therefore, the company was worth more than was
represented.  (*See, e.g.,* Am. Compl. at ¶ 5.)  But every one of the cases above makes clear that
no private cause of action for damages exists in such a circumstance.  Only requested relief that

"would affect neither positively, nor negatively what the creditors would ultimately receive under the debtor's plan, nor would it give them anything different from a Chapter 11 liquidation today" is permissible. *Coffee Cupboard*, 119 B.R. at 20. Allowing Appellants here to recoup money damages in excess of the equity allotted them under the Plan would have "redivide[d] the pie," and would, therefore, have "negatively affect[ed] innocent parties and creditors," and "render[ed] meaningless the whole purpose of a Chapter XI proceeding." *Genesis Health*, 324 B.R. at 517. For all of these reasons, Appellants' attempt to put forward a private cause of action for damages failed as a matter of law.[13]

## II.    THE BANKRUPTCY COURT PROPERLY  DENIED APPELLANTS' MOTION TO AMEND.

As Appellants concede, there is no need to address this question unless this Court concludes that the Bankruptcy Court's determination that Mr. Turbidy told the truth was clearly erroneous. (Appellants' Br. at 41 n.12.)

If this Court reaches the question -- and it need not -- the Bankruptcy Court did not abuse its discretion when it denied Appellants' motion to amend their complaint. In fact, Appellants fail to address, much less refute, the bases for the Bankruptcy Court's holding in their brief. (Appellants' Br. at 41-44.) Simply put, Appellants offer no excuse for their failure to argue that an officer of the court was involved in the alleged "fraud on the court." Nor do Appellants address the fact that there was nothing to suggest that Mr. Salsberg had *no*

---

[13] The only case on which Appellants have ever cited in support of their claim is inapposite to this case. *S.N. Phelps & Co. v. Circle K Corp.*, 181 B.R. 457 (Bankr. D. Ariz. 1995), *aff'd In re Circle K Corp.*, 242 F.3d 380 (9th Cir. 2000). In *Circle K*, the court held that a damages claim could proceed because an award of "monetary damages" would "not upset the confirmed plan," "it is arguable the alleged fraud could not have been asserted in the confirmation litigation" and "the underlying factual claims were not actually adjudicated." *Id.* at 462. As explained above, none of these factors was present here.

opportunity to uncover Mr. Turbidy's alleged fraud.   Accordingly, the Bankruptcy Court's

decision should be upheld.  (November 22, 2006 Order at 11-12.)

> **A.**     **The Proposed Second Amended Complaint Failed to Allege That Mr.**
> **Turbidy Was an Officer of The Court.**

The Bankruptcy Court's dismissal of Appellants' fraud on the court claim was

proper because Appellants' claim rested solely on Mr. Turbidy's alleged perjury and failed to

argue that he was an officer of the court.  "[F]raud upon the court is limited to that species of

fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the

court . . ."   *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir. 1972); *accord*

*Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972).   Mere

allegations of perjury are insufficient to sustain a claim for fraud on the court.  *See Gleason v.*

*Jandrucko*, 860 F.2d 556, 560 (2d Cir. 1988).  "In short, neither perjury nor nondisclosure, by

itself, amounts to anything more than fraud involving injury to a single litigant."  *Id.* ("Absent

the type of fraud which . . . 'is . . . perpetrated by officers of the court,' the requisite interference

with the judicial machinery cannot be established and an independent action for fraud on the

court therefore will not lie.") (citations omitted).  In their proposed Second Amended Complaint

("Proposed Complaint"), Appellants neither alleged an elaborate scheme of fraud that subverted

the integrity of the court itself nor alleged that Mr. Turbidy was an officer of the court when he

allegedly lied.  Nor did Appellants argue in opposition to the motion to dismiss that Mr. Turbidy

was an officer of the Court.  Thus the fraud on the court claim was properly dismissed.  *See, e.g.,*

*id.* at 560.

In response to the Bankruptcy Court's dismissal of their fraud on the court claim,

Appellants made a motion for reargument, insisting for the first time that Mr. Turbidy was an

officer of the court.  The Bankruptcy Court denied Appellants' motion for reargument because

Appellants had not previously argued that Mr. Turbidy was an officer of the court such that Appellants failed to show that the court **overlooked** a controlling decision or factual matter. (Bankr. Ct. Order dated January 16, 2007, at 6-7.)  *See Anglo American Ins. Group, P.L.C. v. CalFed Inc.*, 940 F. Supp. 554, 557 (S.D.N.Y. 1996) (citations omitted).  Because Appellants did not timely argue that Mr. Turbidy was an officer of the court, Appellants' appeal should be denied.

Even if this Court were to address the novel question of whether Mr. Turbidy was an officer of the court, the answer is that he was not.  No decision in this Circuit stands for the proposition that officers of debtors-in-possession are officers of the court.  Rather, Appellants base their entire argument on a single case from the Ninth Circuit.  *In re Intermagnetics Am., Inc.*, 926 F.2d 912, 917 (9th Cir. 1991).  The *Intermagnetics* court provides limited reasoning in support of its decision and no court -- in this Circuit or elsewhere -- has followed *Intermagnetics*' novel reasoning.  Appellants cite additional cases to support their argument, but they support only the proposition that the debtor-in-possession **itself** is an officer of the court or the debtor-in-possession and its officers, like the trustee, have fiduciary duties to creditors, shareholders, and the estate.[14]  For all of these reasons, Appellants' appeal should be denied.

---

[14]    *See Tri-Cran, Inc. v. Fallon*, 98 B.R. 609, 617 (Bankr. D. Mass. 1989) (court did not find that officers of a debtor-in-possession were officers of the court); *Nicholas v. U.S.*, 384 U.S. 678, 690 (1966); *In re Tenn-Fla Partners*, 170 B.R. at 968; *United States v. Randall*, 401 U.S. 513, 518 (1971) (Black, J., dissenting); *In re Michelson*, 141 B.R. at 727; *In re Sal Caruso Cheese, Inc.*, 107 B.R. 808, 816-17 (Bankr. N.D.N.Y. 1989); *In re Tudor Assocs., Ltd., II*, 64 B.R. 656, 662 (E.D.N.C. 1986); *In re Hampton Hotel Investors, L.P.*, 270 B.R. 346, 361 (Bankr. S.D.N.Y. 2001);  *In re Savino Oil & Heating*, 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989); *Wolf v. Weinstein*, 372 U.S. 633, 649 (1963); *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 355 (1985); *In re Brook Valley IV Joint Venture*, 347 B.R. 662, 672-73 (8th Cir. Bankr. App. Panel 2006).

### B.    The Proposed Second Amended Complaint Failed to Allege That Mr. Salsberg Had No Opportunity to Uncover Mr. Turbidy's Alleged Fraud.

The Bankruptcy Court's dismissal of Appellants' fraud on the court claim was proper for an additional, independent reason.  The court found that Appellants did not allege -- and could not allege -- that Mr. Salsberg had *no* opportunity to demonstrate the alleged falsity of Mr. Turbidy's testimony.  (November 22, 2006 Order at 11-12.)  "[A]n aggrieved party seeking relief under the saving clause of Rule 60(b) still must be able to show that there was no 'opportunity to have the ground now relied upon to set aside the judgment fully litigated in the original action.'"  *Gleason*, 860 F.2d at 560 (rejecting the plaintiff's fraud on the court claim in part because the plaintiff had an opportunity during the first lawsuit to challenge the police officers' accounts of the eyewitness testimony, and could have deposed the eyewitnesses) (citations omitted).  Similar to the plaintiff in *Gleason*, Mr. Salsberg had full opportunity to conduct discovery during the confirmation process and to cross-examine and call witnesses.  (CH Tr. at 131:5-9, 129:9-11.)  The Bankruptcy Court acknowledged this in dismissing Appellants' fraud on the court claim: "[T]he [Proposed Complaint] fails to allege that Steven had *no* opportunity to demonstrate the falsity of Turbidy's testimony.  Indeed, Steven raised the issue of the actual fourth quarter results during his interrogation of Turbidy, who he called as his own witness, and had the chance to expose his [alleged] lies."  (November 22, 2006 Order at 11-12.) (Emphasis in original.)  Therefore, because Appellants did in fact have the opportunity to expose Mr. Turbidy's alleged lies at the Confirmation Hearing, the Bankruptcy Court properly dismissed the fraud on the court claim.  *See Gleason*, 860 F.2d at 560; *accord Weldon v. United States*, 70 F.3d 1, 5 (2d Cir. 1995) ("Only if Weldon had no opportunity to litigate the allegations of fraud on the court could this action go forward.").

III.    **APPELLANTS' ARGUMENT REGARDING TRICO'S NET OPERATING LOSS VALUATION HAS NO MERIT.**

It is not at all clear what relevance Appellants' argument regarding Trico's net operating loss ("NOLs") has to the question before this Court.  (Appellants' Br. at 34-40) Nonetheless, it is wrong as a matter of fact and matter of law.  At center, Appellants argue that under a different valuation:

> Trico's NOLs would have been worth a range between $25.9 million to $45.4 million, as compared to the Lazard/NeJame valuation of only $7.5 million.  Thus, with the benefit of Section 382(1)(5), if Trico's dramatically higher revenue and EBITDA were sufficiently high enough to establish a higher Enterprise Value of between $126.9 million ($164.8 million - $45.4 million + $7.5 million), and $146.4 million ($164.8 million - $25.9 million + $7.5 million), approximately, then the higher NOL value would have made up the difference in the so-called "negative equity," as concluded by the Lazard/NeJame valuation.

(Appellants' Br. at 41.)  Appellants' argument is a culmination of three pages of hypothetical calculations, all of which are based upon the incorrect assumption that Trico was solvent immediately prior to the Effective Date.  (*See* Appellants' Br. at 38-41).  Appellants begin: "[t]o determine the value of Trico's NOLs, assuming that Trico was solvent and applied Section 382(l)(5), the starting point is Trico's NOLs immediately prior to the Effective Date." (*Id.* at 38).  Appellants then proceed to calculate that based on that assumption, Trico's NOLs would be worth more and, therefore, Trico would be solvent.  (*Id.* at 41).  Appellants' circular reasoning fails on its face and was properly rejected by the Bankruptcy Court.  (*See* May 5, 2006 Order at 10-11, 15.)

Further, as the Bankruptcy Court already held, Appellants' proposed reinstatement of NOLs is completely inconsistent with black letter tax law.  (*Id.* at 10-11.) Because Trico underwent a "change of control" as defined by section 382 of the Internal Revenue Code when the Plan became effective, its ability to utilize the NOLs to reduce future taxes became quite limited.  26 U.S.C. § 382; *see also* Rev. Rul. 80-58, 1980-1 C.B.; *Hutcheson*

*v. Commissioner*, 71 T.C.M. (CCH) 2425 (1996). Thus under section 382, there is a cap on the amount of NOLs that Trico could use. (*See* May 5, 2006 Order at 9-10.) For all these reasons, Appellants' arguments regarding Lazard's NOLs valuation fails.[15]

## CONCLUSION

For all of these reasons, Trico respectfully submits that this Court uphold the Bankruptcy Court's August 23, 2007 and November 22, 2006 Orders, and dismiss Appellants' appeal in its entirety with prejudice and grant such other and further relief as is appropriate.

Dated: New York, New York
      November 30, 2007

Respectfully submitted,

Matthew Solum (MS 1616)
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4675
Telephone: (212) 446-4800
Facsimile: (212) 446-6460
msolum@kirkland.com

*Counsel for the Appellees/Defendants*

---

[15] Appellants have previously cited caselaw regarding the annulment of marriage in an attempt to support their argument that 26 U.S.C. § 382 does not apply here. (*See* Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss dated January 23, 2006, at 2-3 (citing *Rinehart v. C.I.R.*, 85 T.C.M. (CCH) 1172 (2003); *Shackelford v. C.I.R.*, 70 T.C.M. (CCH) 945 (1995).) But caselaw involving the annulment of marriage has no application here and, further, is flatly contradicted by black-letter law. Rev. Rul. 80-58, 1980-1 C.B.; *Hutcheson v. Commissioner*, 71 T.C.M. (CCH) 2425 (1996).