UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
IN RE TRICO MARINE SERVICES,            :
                        Debtor,         :
                                        :
----------------------------------------X
STEVEN SALSBERG, ESQ. and GLORIA        :
SALSBERG,                               :        07 Civ. 8422 (DLC)
                Plaintiffs/Appellants, :
                                        :        OPINION & ORDER
            -v-                         :        ‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                                        :
TRICO MARINE SERVICES, INC., TRICO      :
MARINE ASSETS, INC., and TRICO MARINE   :
OPERATORS, INC.,                        :
                Defendants/Appellees.   :
----------------------------------------X

Appearances:

Pro se Appellant:
Steven Salsberg, Esq.
205 West 88th Street, Apartment 2D
New York, New York 10024

For Appellant Gloria Salsberg:
Joseph P. Garland
Law Office of Joseph P. Garland
275 Madison Avenue, Suite 420
New York, New York 10016

For Appellees:
Matthew Solum
Kirkland & Ellis LLP
153 East 53rd Street
New York, New York 10022

DENISE COTE, District Judge:

        Appellants Steven Salsberg ("Mr. Salsberg") and his mother

Gloria Salsberg ("Ms. Salsberg") (collectively, the "Salsbergs"

or the "appellants") appeal from the judgment entered in this

adversary proceeding by the United States Bankruptcy Court for the Southern District of New York (Bernstein, C.J.). They also appeal from the bankruptcy court's denial of their motion to amend their pleadings. For the following reasons, the decisions of the bankruptcy court are affirmed.

BACKGROUND

I.   Trico's Bankruptcy

These facts are not in dispute, and are drawn from the decisions of the bankruptcy court. See In re Trico Marine Servs., Inc., 374 B.R. 529 (Bankr. S.D.N.Y. 2007) ("Trico IV"); In re Trico Marine Servs., Inc., 360 B.R. 53 (Bankr. S.D.N.Y. 2006) ("Trico III"); In re Trico Marine Servs., Inc., 343 B.R. 68 (Bankr. S.D.N.Y. 2006) ("Trico II"); In re Trico Marine Servs., Inc., 337 B.R. 811 (Bankr. S.D.N.Y. 2006) ("Trico I"). In 2001, Trico Marine Services, Inc., a business providing marine support services to the oil and gas industry, began experiencing a precipitous decline in its operating results. (Trico Marine Services, Inc. and its domestic subsidiaries, Trico Marine Assets, Inc. and Trico Marine Operators, Inc., will be referred to collectively as "Trico"). Trico began negotiating a pre-petition bankruptcy plan with a group of its debtors in June 2004. The parties reached agreement in September 2004 on a plan that proposed to cancel Trico's existing common stock and to distribute new common stock to

certain debtors in satisfaction of their claims.  Holders of the
old, cancelled common stock would receive warrants exercisable
at times and prices set forth in the proposal.

Trico filed a disclosure statement outlining the plan with
the Securities and Exchange Commission on November 12, 2004.
Exhibit C to the disclosure statement included Trico's financial
projections for revenue and EBITDA (earnings before interest,
taxes, depreciation, and amortization) from 2004 through 2009.
Trico projected total revenue of $103.7 million and EBITDA of
$13.6 million for 2004.  These projections were based on Trico's
actual financial results through September 30, 2004, and the
projected results for the fourth quarter.

Trico commenced prepackaged bankruptcy proceedings on
December 21, 2004.  At the time, its estimated total pre-
restructuring indebtedness was nearly $400 million, and its
interest expense for 2004 was estimated to be $32.4 million.
Approximately $250 million of Trico's indebtedness was
attributable to its Senior Notes; an additional $28.4 million
was attributable to interest on those Notes.  The prepackaged
plan presented to the bankruptcy court would eliminate the
entire Senior Note debt.  As The Honorable Stuart M. Bernstein
observed, "[a]bsent confirmation, the projected 2004 EBITDA
would fall approximately $19 million short of the amount needed
just to pay the 2004 interest expense due on the Senior Notes."

Trico IV, 374 B.R. at 533.  Mr. Salsberg, a Trico shareholder,
filed an objection to the plan on January 10, 2005.

## II.  Plan Confirmation

A hearing was held on January 19 to address the disclosure
statement, the plan, and Mr. Salsberg's objection.  Trico's sole
witness, Richard NeJame, a director in the restructuring
advisory group at Lazard Freres, was qualified to testify as an
expert in the fields of valuation and restructuring.  NeJame
described his extensive due diligence of Trico, and opined that
Trico was insolvent.  Absent the restructuring, NeJame
testified, Trico's shareholders would receive nothing.  Were the
restructuring approved, the Senior Noteholders would receive
between thirty-five and forty-five percent of what they were
owed.

Mr. Salsberg cross-examined NeJame, who testified that his
valuations of Trico were based on information available to him
in October 2004.  He had not updated his estimates based on
subsequent data, and he did not know Trico's fourth quarter
results.  Under questioning from Mr. Salsberg concerning the
potential effects of any misstatements contained in Trico's
revenue projections, NeJame averred that, because a large
component of Trico's operating costs were fixed, between seventy
and eighty percent of any additional revenue would go "straight
down to EBITDA."  That is, NeJame clarified, any error in

revenue projection would "make a big difference in the EBITDA bottom line."  NeJame emphasized, however, that his valuation of Trico assumed a quadrupling in EBITDA from 2004 to 2008.

Mr. Salsberg called as his sole witness Trevor Turbidy, Trico's chief financial officer.  Because the instant action turns entirely on Turbidy's testimony, it is quoted at some length.  The direct examination began as follows:

> Q:      Good afternoon.  Do you know what the fourth quarter revenues are for Trico?
>
> A:      We have not finished our fourth quarter consolidation yet.  So, no, I don't have an estimate for that number.
>
> Q:      Do you have a preliminary estimate?
>
> A:      I wouldn't be allowed to disclose that under FD at this point.

According to Chief Judge Bernstein, Turbidy's reference to FD was to SEC Regulation FD, 17 C.F.R. § 243.100 et seq., which prohibits certain disclosures of material non-public information regarding an issuer or its securities.  At this point in the examination, counsel for Trico objected, reiterating Turbidy's FD concern and questioning the relevance of Mr. Salsberg's examination.  The bankruptcy court engaged the parties in a brief colloquy concerning the objections.  The colloquy, in pertinent part, went as follows:

> TRICO COUNSEL:      I think the issue that we have here as Mr. Turbidy has testified is that he doesn't have the actual and with regard

to preliminary I'm just not quite sure why that's probative when at this point [in] time there could be a number of variables that would not be included in a preliminary est[im]ate.  So the point is given the risk of inadvertent FD and the fact that it's very preliminary just doesn't really serve any probative value.

THE COURT:     What's the probative value of a preliminary estimate when the -- what's the probative value of a preliminary estimate?

MR. SALSBERG:     The probative value is that they're saying that revenue growth isn't that great and I think maybe it is and I'm trying to find out.

THE COURT:     But you're talking about one more quarter since projections.

MR. SALSBERG:     Well, they bottomed out in the first quarter of '04 and then since then they grew very, very handsomely in the second and third quarter compared to the first quarter of '04.  If the fourth quarter of '04 is up that shows -- that shows that very positive things are happening and then -- and they said that their revenue is only going to increase 5 point something percent from '04 to '05.  That may imply that their forecasts are far too conservative to be reasonable.

TRICO COUNSEL:     Your Honor, if I could just address that point again.  The plan here, the projections in the plan are based on five years which is twenty quarters.  An up tip [sic] in one quarter is just not going to be material, number one.  Number two, I think this is the same situation we've seen in other cases.  The plan is not necessarily about hitting a number precisely on the nose.

6

                                             I fail to see the probative value especially when weighed against the prejudice of an FD disclosure, the fact that it's extremely preliminary.

. . .

THE COURT:              I'm going to overrule the objection. The argument is that if they exceeded expectations for this quarter maybe their future projections are also conservative or too conservative. That's what the argument is.

  . . .

TRICO COUNSEL:     Your Honor, if I may just briefly. Would it be possible to alter the questions that the question is directed in such a way as to whether there's been any material change in the financial circumstance of the company in the last two months which would change the valuation conclusions?

The court then proceeded to question Turbidy:

THE COURT:              Let me ask the question.  What did you project -- did you have a projection for the fourth quarter of 2004?

TURBIDY:                Yes, we did.

THE COURT:              What was that projection?

TURBIDY:                I don't recall the exact number of revenue projections.

THE COURT:              Is that in the disclosure statement?

TRICO COUNSEL:     Your Honor, I don't believe it is is [sic] an aggregate number.  I think it's just a 2004 yearly which based on the time this was prepared I believe there would have been two quarters of actual results and two quarters of projected results contained in the aggregate for '04.

7

| THE COURT: | Do you recall whether your actual expense for the fourth quarter of 2004 was higher, lower or consistent with the projected results? |
| TURBIDY: | In total 2004 was consistent with our projections. |
| THE COURT: | Just the last quarter? |
| TURBIDY: | It was fairly consistent, yes. It wasn't spot on dollar for dollar. |
| THE COURT: | It is higher or lower? |
| TURBIDY: | I believe it was slightly higher. |
| THE COURT: | I'll take that answer they higher [sic] -- they did better than they projected. I understand their concern about disclosing in a court, particularly a preliminary analysis, but they're saying they did better. I think that answers your question. |

Mr. Salsberg intervened at this point and asked, "How much better?" Turbidy replied, "Not materially."

Chief Judge Bernstein overruled Mr. Salsberg's objection and confirmed the plan. He credited NeJame's testimony concerning the value of Trico, and concluded that the company was "hopelessly insolvent." Chief Judge Bernstein made no mention of Turbidy or his testimony in his decision. Mr. Salsberg did not appeal from the order confirming the plan.

III. The Adversary Proceeding

Following confirmation of the plan, Mr. Salsberg transferred some of the warrants distributed thereunder to Ms.

Salsberg.  Together, on July 19, 2005, they commenced an adversary proceeding before the bankruptcy court to vacate the confirmation order pursuant to 11 U.S.C. § 1144, which provides that a plan of confirmation may be revoked "if and only if such order was procured by fraud."  The Salsbergs claimed that Turbidy's testimony at the confirmation hearing had been perjurious and that the plan confirmation had therefore been procured by fraud.  Specifically, they contended that Turbidy had lied when he testified that the 2004 fourth quarter results were fairly consistent with, and slightly but not materially higher than, Trico's fourth quarter projections.  At the time of Turbidy's testimony, the Salsbergs contended, he knew that Trico's fourth quarter revenue and EBITDA were substantially higher than the projections.  They argued that his testimony was intended to mislead the court into believing that Trico was in worse financial condition than it actually was, compelling the court to approve the bankruptcy plan, from which, the Salsbergs alleged, Turbidy would benefit personally.

By Opinion dated January 6, 2006, the bankruptcy court ruled that it could not revoke the plan under Section 1144 because the plan "would be exceedingly difficult to unwind and impossible to protect innocent third parties."  Trico I, 337 B.R. at 815.  The court granted the Salsbergs leave to amend their complaint within thirty days "to seek other, appropriate

relief, if any." Id. at 816.  The Salsbergs moved for
reconsideration.  The bankruptcy court granted the motion for
reconsideration, but adhered to its original decision denying
revocation under Section 1144.  Trico II, 343 B.R. at 68.

The Salsbergs then amended their complaint, demanding
damages from Trico under Section 1144 and alleging that Trico
had committed a "fraud on the court."  Following this amendment,
the Salsbergs moved to amend their complaint again to add
Turbidy as a defendant in the fraud-on-the-court claim.  By
Opinion dated November 22, 2006, the bankruptcy court denied the
Salsbergs' motion to amend.  The court ruled that, based on
Second Circuit law, amendment would be futile for three reasons:
(1) the Salsbergs' claims against Turbidy rested solely on his
alleged perjury; (2) the Salsbergs failed to allege that an
officer of the court perpetrated the fraud; and (3) the proposed
amended complaint failed to allege that Mr. Salsberg had no
opportunity to demonstrate the falsity of Turbidy's testimony.
The Salsbergs moved for reconsideration, and the bankruptcy
court denied that motion.  Trico III, 360 B.R. at 60-61.

On May 21, 2007, the bankruptcy court conducted a trial on
the Salsbergs' fraud claim against Trico.  The trial was limited
to the single question of whether Turbidy knowingly lied about
Trico's fourth quarter results with the intent to deceive the
court at Trico's confirmation hearing.  Turbidy, Mr. Salsberg,

and Ms. Salsberg testified at the trial.[1]  According to the
bankruptcy court, the trial evidence showed the following.
First, by the time of the confirmation hearing, Turbidy knew
that Trico had exceeded its fourth quarter projections of both
revenue and EBITDA.  Trico had projected $24.9 million in fourth
quarter revenue, but had achieved actual revenue of $33.3
million -- approximately 34% higher than projected.  Likewise,
Trico had projected fourth quarter EBITDA of $4.1 million, but
the aggregate EBITDA for October and November alone totalled
$5.599 million -- approximately 33% higher than projected, even
absent December's actual results.  Second, although he had
received December 2004 revenue figures, Turbidy had not received
information regarding December 2004 EBITDA by the time he
testified at the confirmation hearing, but he anticipated an
unusually large charge during the quarter attributable to a
British pension plan supported by Trico.  At the time of the
confirmation hearing, Turbidy did not know the actual number
representing the charge, but he understood that the charge would
"severely impact" fourth quarter EBITDA.  Trico IV, 374 B.R. at
536.  Third, information supplied after the confirmation hearing
revealed that EBITDA was negative in December, bringing fourth
quarter EBITDA down to $5.4 million -- still approximately 32%

---

[1]    Mr. Salsberg and Ms. Salsberg testified only with regard to
Ms. Salsberg's standing, an issue the bankruptcy court had
raised sua sponte.

higher than projected.  Operating expenses were also higher in
the fourth quarter due to three special charges: $2.7 million
for the British pension plan, $700,000 for adjustment to a
redundancy reserve, and $1.5 million for an inventory reserve.
Fourth, when Turbidy testified that Trico's fourth quarter
results were fairly consistent with, and slightly but not
materially higher than, its projections, he was focused on
EBITDA and not revenue.  The Salsbergs contended at trial that
he had been focused on revenue.

The bankruptcy court deemed Turbidy's testimony at trial to
be credible, and "found him to be honest, candid and
forthright," Trico IV, 374 B.R. at 536, and therefore ruled that
at the time of his testimony, Turbidy "held the honest belief
that the actual results for the fourth quarter EBITDA, which
were not then final and were subject to credit and other
adjustments, including a large UK pension charge, would not be
appreciably higher or materially better than the fourth quarter
EBITDA projection." Id. at 540.  With regard to the materiality
of the discrepancy between Trico's projected fourth quarter
EBITDA and its higher actual results, the bankruptcy court ruled
that "when Turbidy testified that fourth quarter EBITDA was
slightly but not materially higher, he was referring in general
to the valuation of Trico, and specifically, to the effect that
the slightly higher quarterly EBITDA had on Trico's ability to

meet a $9 million quarterly interest expense." Id. The court further ruled that, although Turbidy had a duty to disclose material information, his failure to inform the court of the pending British pension charge did not evidence an intent to deceive the court or anyone else. Id. at 540-41. Accordingly, Chief Judge Bernstein ordered the adversary proceeding to be dismissed.

Appellants timely filed their notice of appeal on September 28.[2] They seek review of the bankruptcy court's August 24, 2007 judgment after trial as well as its November 22, 2006 denial of their motion to amend their complaint to bring a fraud-on-the-court claim against Turbidy.

DISCUSSION

I.    Standard of Review

A district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree." Fed. R. Bankr. P. 8013.  On appeal, the legal conclusions of the bankruptcy court are reviewed de novo, but the findings of fact are reversed only when they are "clearly erroneous." Kuhl v. United States, 467 F.3d 145, 147 (2d Cir. 2006) (citation omitted) (per curiam); In re Worldcom, Inc., 339 B.R. 836, 840 (S.D.N.Y.

---

[2]    Appellants sought leave to file an oversized and corrected reply brief on December 14, 2007.  Their motion was granted on January 22, 2008, and appellants' Corrected Reply Brief was considered in connection with this appeal.

2006).  "While the trial court's findings of fact are not
conclusive on appeal, the party that seeks to overturn them
bears a heavy burden."  In re Miner, 229 B.R. 561, 565 (B.A.P.
2d Cir. 1999).  The reviewing court must be left with a
"definite and firm conviction" that a mistake has been made.
Ortega v. Duncan, 333 F.3d 102, 107 (2d Cir. 2003) (citation
omitted).  Where the trial court's "factual finding is based
upon a credibility determination, we are mindful that
particularly strong deference should be granted to the finding
in light of the factfinder's unique ability to assess the
witness."  Id. (citation omitted).

II.  Turbidy's Alleged Misrepresentations

     As the bankruptcy court correctly observed, New York law
governed the Salsbergs' fraud claim.  Under New York law, a
"'fraud claim is defined as a representation of fact, which is
untrue and either known by defendant to be untrue or recklessly
made, which is offered to deceive and to induce the other party
to act upon it, and which causes injury.'"  Trico IV, 374 B.R.
at 537 (quoting Suez Equity Investors, L.P. v. Toronto-Dominion
Bank, 250 F.3d 87, 104 (2d Cir. 2001).  The trial focused on the
truthfulness of Turbidy's statements at the confirmation hearing
and, to a lesser extent, his scienter in offering them.

     Appellants contend that the bankruptcy court clearly erred
in finding that Turbidy had testified truthfully about Trico's

14

financial condition at the confirmation hearing.  They contend
that Turbidy's statements that Trico's fourth quarter results
were "consistent with our projections," "slightly higher" than
those projections, and "[n]ot materially" better than those
projections were false and misleading, and that Turbidy's
failure to inform the court of certain charges that would
depreciate Trico's fourth quarter EBITDA was intentional and
purposefully misleading.  Because appellants have not
demonstrated that the bankruptcy court's findings were clearly
erroneous, the decision of the bankruptcy court is affirmed.

The bankruptcy court determined that Turbidy's testimony
was not false because that testimony turned on Trico's EBITDA,
not revenue, and Turbidy's statements were honest and truthful
with regard to EBITDA in light of the purpose for which the
confirmation hearing was held, i.e., the valuation of Trico.
Appellants cavil to varying extents with both of these
propositions.

A.    Turbidy's Focus on EBITDA

The bankruptcy court determined that Turbidy's confirmation
hearing testimony focused on EBITDA, and not revenue, based on
Turbidy's responses to the court's questions during the
confirmation hearing, Trico's public filings in connection with
its reorganization, and Turbidy's testimony at trial.  At the
confirmation hearing, Turbidy was asked about Trico's "revenue"

15

as well as its "actual experience." He uniformly replied with
reference to EBITDA because, the bankruptcy court found, "EBITDA
(and cash flow) directly reflected Trico's financial health and
the ability to pay its bills." Trico IV, 374 B.R. at 538. This
was corroborated by Trico's Form 10K, published after the
confirmation hearing and admitted into evidence at trial, which
stated that during Trico's reorganization, the company focused
"primarily on cash flow from operations and net changes in cash
and cash equivalents in order to fund operations, maintain the
fleet and service its debt." Id. Finally, Turbidy testified at
trial that he understood the questions at the confirmation
hearing to focus on Trico's EBITDA, and the court specifically
noted that it found "that Turbidy testified credibly when he
said that his answers were focusing on EBITDA, not revenue."
Id.

Appellants scarcely contend that this finding is clearly
erroneous. At most, they intimate that Turbidy may have been
"confused" about the basis for his testimony, and that the
bankruptcy court therefore erred in determining that the
testimony was based on EBITDA. This is insufficient to shoulder
appellants' weighty burden in overturning a trial court's
finding of fact.[3]

---

[3]    It should be noted that although the bankruptcy court
specifically found that Turbidy had based his testimony on

B.    The Truthfulness of Turbidy's EBITDA Statements

Appellants rest the gravamen of their appeal on a challenge to the bankruptcy court's finding that Turbidy's testimony with respect to Trico's EBITDA was not false.  They contend that Turbidy's statements that Trico's fourth quarter EBITDA was "consistent with our projections," "slightly higher" than those projections, and "[n]ot materially" better than those projections were patently false in light of the fact that Trico's actual fourth quarter EBITDA was approximately 33% better than Trico's projections.  Indeed, appellants claim, although Turbidy had not seen December 2004 EBITDA figures, he was aware that the total EBITDA from October and November had already surpassed Trico's projections for the quarter as a whole.

The bankruptcy court asserted that Turbidy's testimony at the confirmation hearing had to be understood in the context of the "bigger picture" of Trico's general financial health at the time.  Id. at 539.  Despite substantial EBITDA growth in November 2004, Trico posted negative operating cash flow in the

---

EBITDA, it observed that any dispute about whether Turbidy's testimony was based on revenue or EBITDA was "largely immaterial under the Salsbergs' theory because the percentage changes [between projections and actual results] were approximately the same."  Trico IV, 374 B.R. at 538.  That said, Turbidy's focus on EBITDA was central to the bankruptcy court's analysis and therefore, on appeal, will furnish the basis for this Court's analysis.

same month, and its cash had declined by $2.55 million.  It also
suffered net operating losses and negative operating cash flow
in October and November.  Trico's fourth quarter and annual
results, published after the confirmation hearing but introduced
into evidence at trial, "confirmed Trico's bleak financial
prospects," id., showing net operating losses of $8.5 million,
negative cash flow from operations totaling $4.5 million, and a
cash loss of $3.3 million in the month of December 2004 alone.
Against this backdrop of a "company teetering on the brink of
survival," id. at 538-39, the $1.3 million difference between
Trico's projected and actual EBITDA that existed at the time of
the confirmation hearing "was only 'slightly' higher than the
projections."  Id. at 539.  That is, "when Turbidy testified
that fourth quarter EBITDA was slightly but not materially
higher, he was referring in general to the valuation of Trico,
and specifically, to the effect that the slightly higher
quarterly EBITDA had on Trico's ability to meet a $9 million
quarterly interest expense."  Id. at 538.

Appellants contend that Trico's fourth quarter EBITDA was
substantially higher than the projections, and that the
bankruptcy court therefore clearly erred in crediting Turbidy's
testimony to the effect that EBITDA was only "slightly higher."
Their challenge takes a variety of forms, each of which fails.

18

First, appellants rely on several internal Trico reports stating that the company experienced "dramatically" higher EBITDA and revenue than was set forth in the projections included in Trico's disclosure statement.  But the bankruptcy court's decision turned heavily on the context in which Turbidy testified, and the general backdrop against which the $1.3 million difference from EBITDA projections was to be evaluated. Whether described as "dramatically" or "slightly" higher, there is no dispute as to the figures themselves.  Appellants' citation to these reports, which emanated from an entirely different context, does nothing to undermine the bankruptcy court's finding concerning the veracity of Turbidy's testimony in the context of the confirmation hearing.

Second, appellants appear to contend that Trico's fourth quarter EBITDA was actually sufficient to meet the company's quarterly interest expense, and that the bankruptcy court's finding was accordingly erroneous.  Appellants observe that Trico's fourth quarter EBITDA was $5.4 million, and that the special charges Trico was required to pay amounted to $4.9 million.  Together, this $10.3 million would have been sufficient to meet Trico's $9 million quarterly interest.  This argument fails, however, because it does not account for the fact that Trico did in fact have to pay the special charges. Even if the quarterly interest charge was $7.6 million, as

appellants contend in conclusory fashion, its $5.4 million in actual EBITDA was plainly insufficient to meet its debt.

Third, in a transparent effort to adjust artificially the standard of review applicable to their appeal, appellants contend that this exclusively fact-based dispute presents an issue of law to be reviewed de novo.  They pose this putative issue of law: "If a witness knows a fact and is asked about that fact at trial but misunderstands the question and answers a different question and gives an answer that is true as to the question-not-asked but false as to the question-actually asked, has the witness testified falsely?"  This is hardly a legal issue.  Rather, appellate consideration of Turbidy's testimony focuses exclusively on whether the facts adduced by the bankruptcy court in determining that Turbidy testified truthfully were clearly erroneous.

Finally, appellants contend that even if Turbidy did not intentionally mislead the bankruptcy court with his false testimony, he was recklessly indifferent to the falsity of his statements.  But in the context of a fraud claim, "reckless indifference" is only pertinent if the statements at issue were in fact untrue.  As the Second Circuit has held, liability lies for fraud under New York law only for statements "known by defendant to be untrue or recklessly made."  Suez Equity Investors, L.P., 250 F.3d at 104.  "Known to be untrue" and

"recklessly made" are simply two different knowledge standards. The requirement that the statements at issue actually be untrue remains the same.  Because the bankruptcy court found that the statements were in fact true, and because this finding was not clearly erroneous, this argument fails.

In sum, none of appellants' arguments demonstrates clear error in the bankruptcy court's finding that Turbidy testified truthfully as to Trico's fourth quarter EBITDA results.  This finding is therefore affirmed.

III.     Turbidy's Alleged Omissions

Appellants contend that Turbidy had an obligation to disclose at the confirmation hearing certain information he knew concerning Trico's steadily improving financial health, including, for example, the expiration in 2005 of contracts unfavorable to Trico.  They aver that Trico's fourth quarter 2004 performance was an improvement over the rest of that year's performance, and that "Trico had been climbing steadily out of the 'cellar'" since the first quarter of 2004.  "With full disclosure," appellants contend, the bankruptcy court would have perceived "at least a material possibility that Trico's prospects were substantially improved," and would have declined to confirm the reorganization plan.

With only one exception, these alleged omissions are raised for the first time on appeal.  Although they now contend that

there was certain information "Turbidy was obliged to disclose
even if he was not being deceptive in the answers he gave to the
questions he was asked," appellants represented before the
bankruptcy court that the court did not need to "determine that
Mr. Turbidy had an affirmative, independent obligation to
disclose" anything.  Indeed, there is no evidence that
appellants raised any of these particular omissions before the
bankruptcy court.  Because appellants now advance an argument
they specifically repudiated below, this argument will not be
considered for the first time on appeal.[4]  See Singleton v.
Wulff, 428 U.S. 106, 120 (1976).

The sole alleged omission considered by the bankruptcy
court concerned the three special charges that deflated Trico's
fourth quarter EBITDA.  The Salsbergs argued before the
bankruptcy court that "even if Turbidy's testimony was
technically correct, he should have voluntarily disclosed that
the 'slightly' but not 'materially' better fourth quarter EBITDA
was negatively impacted by three special, unusually large

---

[4]    In addition, to the extent appellants' argument on appeal
turns on the materiality of Turbidy's alleged omissions, that
was not in issue at trial.  Indeed, as the bankruptcy court
noted, "the materiality and valuation issues were severed at the
Salsbergs' request."  Trico IV, 374 B.R. at 539 n.9.  To the
extent appellants argue that Trico was actually solvent at the
time the reorganization plan was confirmed, appellants have
waived this argument because they appeal only from the
bankruptcy court's judgment after a trial limited to their own
fraud claim.

expenses."  The bankruptcy court first ruled that, as an
accounting matter, it was appropriate for Trico to deduct these
expenses from its income in calculating its EBITDA.  Having
found no accounting impropriety, the court then found that the
Salsbergs had "failed to show that Turbidy intended to deceive
anyone when he referred to the fourth quarter EBITDA, without
stating that the result included the special UK pension charge."
Trico IV, 374 B.R. at 540.  On appeal, appellants have not
specifically controverted the bankruptcy court's finding, nor
have they adduced any facts to show that the bankruptcy court
was in error.  Accordingly, the bankruptcy court's finding with
regard to Turbidy's failure to reveal the fourth quarter special
charges is affirmed.

II.  Motion to Amend

       Appellants "recognize that if the Court affirms the
Bankruptcy Court's conclusions at the trial, there would be no
factual support for the fraud-on-the-court claim and that the
Bankruptcy Court's decision on amending would therefore be
moot."  Appellees do not dispute this contention.  Accordingly,
having found that the bankruptcy court's trial conclusions were
not clearly erroneous, this Court need not address the appeal of
the bankruptcy court's denial of appellants' motion to amend.

CONCLUSION

For the foregoing reasons, the decision of the bankruptcy

court is affirmed.   The Clerk of Court shall dismiss the appeal.

SO ORDERED:

Dated:     New York, New York
           February 21, 2008

                                    DENISE COTE
                           United States District Judge

24

Copies sent to:

Steven Salsberg
205 W. 88th Street, #2-D
New York, NY 10024

Joseph P. Garland
Law Office of Joseph P. Garland
275 Madison Avenue, Suite 420
New York, NY 10016

Matthew Osborn Solum
Kirkland and Ellis LLP
153 East 53rd Street
New York, NY 10022